### BRANSFORD v. REGAL SHOE CO.

#### In re HORRELL & CRISS.

#### (Circuit Court of Appeals, Fifth Circuit. November 20, 1916.)

#### No. 2921.

1. CONTRACTS ☞170(1)—CONSTRUCTION BY PARTIES.
   Ordinarily the courts will give effect to the construction of a contract by the parties.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. ☞170(1).]

2. BANKRUPTCY ☞140(1)—TITLE OF TRUSTEE—GOODS CONSIGNED FOR SALE.
   Claimant consigned a stock of shoes to the bankrupt corporation under an agreement that title should not pass to the bankrupt, and that at the expiration of the period of consignment the bankrupt should purchase all goods then on hand at the invoice prices and terms. A few days after the expiration of the time limited, the parties entered into a further contract that the original contract should be extended for another period, and at the expiration of that time contracted for a second extension. *Held* that, as the parties may change or modify a contract by a subsequent one, and the modification may be changed by a subsequent contract, there was a sufficient consideration for the renewals, and title did not pass to the bankrupt; bankruptcy occurring before the expiration of the last period of renewal.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199; Dec. Dig. ☞140(1).]

Petition to Superintend and Revise from the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

In the matter of the bankruptcy of Horrell & Criss. Petition for reclamation by the Regal Shoe Company, opposed by F. M. Bransford, trustee in bankruptcy. On certificate from the referee, an order denying the petition was reversed, and petition granted, whereupon F. M.

Bransford, trustee, petitions to superintend and revise the order. Petition denied.

The following is the opinion of Meek, District Judge, in the court below:

Horrell & Criss, a mercantile corporation, doing a retail clothing and shoe business in the city of Ft. Worth, Tex., was adjudged a bankrupt on the ——— day of ———, 1915, on its voluntary petition. A receiver was appointed and, having qualified, took charge of the bankrupt stock of merchandise, including a stock of shoes shipped to the bankrupt by Regal Shoe Company, of Boston, Mass. Later a trustee of the bankruptcy estate, being appointed and having qualified, took possession of the stock of merchandise, including the stock of shoes. Regal Shoe Company intervened and claimed title to the shoes, and asked that they be returned to it by the trustee. The trustee denied this claim of title. Pending settlement of the issue thus made, the shoes, on account of prospective rapid deterioration in value, were sold for an agreed price, and the sum so realized is the present subject of controversy. After hearing, the referee in bankruptcy found from the evidence that title to the shoes had passed to the bankrupt, and so entered an order denying the prayer of the Regal Shoe Company for the proceeds resulting from their sale. That company seeks this review.

On August 7, 1911 the Regal Shoe Company entered into a written contract with Horrell & Criss wherein the former agreed to consign to the latter certain shoes not to exceed in value the sum of $5,000. This contract was to be in force for a period of 18 months from its date. Horrell & Criss agreed not to permit any of the merchandise so consigned to be removed from its store until sold or returned to Regal Shoe Company in accordance with the terms of the contract; that Horrell & Criss would properly care for said goods and indemnify and save harmless Regal Shoe Company from all loss, cost, or expense arising from loss or damage to said goods, caused by fire, accident, or otherwise; that it would at its own expense keep all of said goods properly insured in the name of the Regal Shoe Company to an amount and in a company satisfactory to that company; that it would use its best endeavor to sell the goods so consigned; that it would allow the party of the first part at any time to make a detailed inventory of the consigned goods then on hand; that it would keep accurate and complete books of account with reference to the goods consigned under the contract and the sale thereof, which books, together with all statements and memoranda concerning same, should at all times be open to the inspection of Regal Shoe Company; that it would on the first of each month render Regal Shoe Company a complete, accurate, and detailed statement of the sales of said consigned goods made by Horrell & Criss during the preceding month, and that it would at that time turn over in cash to Regal Shoe Company the purchase price and one-half of the selling allowance of all consigned goods sold by it during said preceding month, said purchase price to be equal to the invoice valuation of said goods sold; that it would at any time on demand forthwith return to the party of the first part any and all goods consigned as aforesaid and then unsold.

Clause (g) of the contract provided as follows: "That upon the termination of this agreement it (Horrell & Criss) will (and its executors and administrators shall) purchase of the party of the first part (Regal Shoe Company) all consigned goods then on hand at invoice prices and terms." The contract made further provision that "all goods consigned hereunder shall be and remain the property of the party of the first part until sold, and thereupon the title to the proceeds arising from such sale shall likewise vest in the party of the first part until the purchase price has been turned over in accordance with the terms hereof." It further provided that: "This agreement may be terminated at any time by the party of the first part upon the breaching of any of the terms and conditions hereof by the party of the second part. It may also be terminated by party of the first part at any time by giving thirty days' notice in writing to that effect to the party of the second part. A termination of this agreement shall in no manner affect the title of the

party of the first part to the goods consigned hereunder and to the proceeds arising from the sale of such goods."

At the termination of the contract period Horrell & Criss did not purchase the consigned goods then on hand. Instead, on March 1, 1913, a few days after such expiration the following agreement was entered into: "It is mutually agreed that the agreement made on the 7th day of August, 1911, between Regal Shoe Company, of Boston, Mass., and Horrell & Criss of Ft. Worth, Tex., regarding the local agency at said Ft. Worth, is hereby continued without change until February 7, 1914, subject to the same conditions, and that this rider shall be attached to and be made a part of the original contract." A few days after the expiration of the period as thus extended and on, to wit, February 14, 1914, a further contract was entered into in terms identical with the above extending the agreement until February 7, 1915.

The record and exhibits accompanying the certificate of the referee abundantly reveal that Regal Shoe Company and Horrell & Criss acting in good faith, entered into the contract of August 7, 1911; that they were agreed as to its terms and their meaning; that in so far as the exigencies of trade permitted they observed and complied with the terms of the contract as above outlined during the entire period for which it was made to run, to wit, 18 months. This contract has in it all the provisions usually found in a contract by the terms of which merchandise is consigned by a manufacturer to an agent, or retailer, for sale for the account of the manufacturer—the title to the merchandise remaining in the latter until sold. It would be so construed without question, were it not for the presence therein of clause (g) with its provisions and what has transpired between the parties with relation thereto.

[1] As stated above, upon the termination of the contract period Horrell & Criss did not purchase the consigned goods then on hand; but, instead, a few days after such termination, entered into an agreement, designated a "rider" which was attached to the original contract, and stipulated that the original contract with its terms should be in effect and control the relation of the parties for another term. A few days after the termination of the extended term another extension of the original contract was undertaken to be made by a "rider" identical with the former one. It does not appear from the record that, between the time of the termination of the original contract and the execution of the respective "riders," the rights of any third party or parties intervened. After execution by the parties of the respective "riders," they continued to do business under and comply with the terms of the original contract, thus revealing their good faith and indicating their purpose and intention. Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to its provisions. And the subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to by the court and in some cases made controlling. 9 Cyc. 588.

The parties have the undoubted right to make their own contract, and to put their own construction upon it, and to regulate their rights and liabilities thereunder. If the court leaves the parties to be governed by their own understanding of their own language, it in effect enforces the contract as actually made. That they should be so permitted to construe their own agreement accords with every principle of reason and justice. Metropolitan National Bank v. Benedict Co., 74 Fed. 182, 20 C. C. A. 377. "And when both parties to a contract, acting in good faith, are agreed as to its meaning and their rights under it a stranger having no interest in the subject-matter of the contract cannot insist that a different interpretation shall be put upon it, or compel the parties to put that interpretation upon it which will benefit him. The law will not override the will of the parties in the construction of their own contracts, for the benefit of a third party, whose interests are not affected thereby, or who acquired his interest with full knowledge of what the parties conceded and agreed was their contract." Metropolitan National Bank v. Benedict Co., supra.

[2] The trustee contends that there was no consideration for the attempted renewal of the contract through the "riders," and that therefore, upon the expiration of the contractual period, the shoes in virtue of the provisions of

section (g) by absolute sale became the property of Horrell & Criss. Therefore what, if any, consideration was given in the attempted renewals through the "riders"? In addition to the parties' agreeing to an extension of the terms of the original contracts, with its consequent liabilities upon both parties, the renewals by such "riders" were in and of themselves a sufficient consideration. Parties may change or modify a contract by a subsequent one, and both of these may be modified by a third. Davis Brothers v. Dallas National Bank, 7 Tex. Civ. App. 41, 26 S. W. 222; Ellet-Kendall Shoe Co. v. Martin, 34 Am. Bankr. Rep. 502, 222 Fed. 851, 138 C. C. A. 277.

A strong evidential fact that Horrell & Criss considered title to the merchandise to be in Regal Shoe Company is the fact that Regal Shoe Company was not listed as a creditor of the bankrupt, nor were the shoes in question included in the assets. The contention of the trustee cannot, in my opinion, rightly be upheld. The referee erred in denying the claim of the shoe company to the shoes in question and consequently to the fund resulting from their sale.

The order of the referee, denying the right of claimant and directing such fund to be turned over to the trustee for distribution under the terms of the bankruptcy law, will stand reversed, and an order will be entered directing the fund to be turned over to the Regal Shoe Company.

B. K. Goree, of Ft. Worth, Tex., for petitioner.

Geo. Q. McGown and Edwin T. Phillips, both of Ft. Worth, Tex., for respondent.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

PER CURIAM. This case seems to have been correctly ruled and decided in the District Court. The petition to superintend and revise is denied.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes