### BARTLING TIRE CO. v. COXE.

### In re POSNER TIRE CO.

(Circuit Court of Appeals, Fifth Circuit. March 20, 1923.)

No. 3995.

1. **Corporations ⬡➡655—Right of Missouri corporation as consignor to recover property from bankrupt's estate in Alabama held not affected by laws relating to foreign corporations.**

   The right of Missouri corporation, consignor, to recover from the estate of a bankrupt in Alabama the property consigned, was not affected by the laws of Alabama relating to foreign corporations doing business in that state.

2. **Bankruptcy ⬡➡140(3)—Consignor of goods entitled to recover them and accounts of goods sold on credit.**

   Where goods are shipped on consignment to one who becomes bankrupt, the consignor is entitled to recover the goods from the trustee in bankruptcy, and to have assigned and delivered to him the accounts of goods sold on credit by the bankrupt, notwithstanding that the bankrupt's trade acceptance was deposited in a bank as collateral security.

3. **Bankruptcy ⬡➡303(3)—Finding that transaction was sale, and not consignment, not sustained.**

   Finding by referee and District Court that transaction was an absolute sale, and not a consignment, *held* not sustained by evidence.

Appeal from the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

In the matter of the Posner Tire Company, bankrupt; John S. Coxe, trustee. Petition by the Bartling Tire Company, praying the return of property delivered to the bankrupt on consignment. From an adverse decree, petitioner appeals. Reversed and remanded.

W. H. Sadler, Jr., of Birmingham, Ala. (Nesbit & Sadler, of Birmingham, Ala., on the brief), for appellant.

R. Du Pont Thompson, of Birmingham, Ala., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. January 4, 1922, an involuntary petition in bankruptcy was filed against the Posner Tire Company, and it was in due course adjudicated a bankrupt. Appellant filed a petition, alleging that it had delivered to the bankrupt on consignment a carload of automobile tires and tubes, and praying that such property, or the unsold portion thereof, should be returned to it, and that any unpaid accounts for such of said property as had been sold should be assigned and delivered to it. The referee, after hearing the evidence, entered an order dismissing the petition, which on review was confirmed by the District Judge. Judgment for $10,000 was also entered against the appellant and its surety upon a bond, which by agreement had been substituted for that portion of the property described in the petition which had not been sold by the bankrupt. This appeal is from the foregoing order and judgment of the District Court.

Evidence for the appellant discloses the following state of facts:

⬡➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Posner Tire Company, the bankrupt corporation, had been engaged for several years in the automobile tire business at Birmingham. It had an authorized capital stock of $7,500, of which H. J. Posner and his wife jointly owned one half, and Carl Steiner owned the other half. Its fixtures and equipment, of the value of about $850, constituted the bulk of its assets and were mortgaged to secure a note for $4,400 to Steiner Bros., a banking concern in which Steiner was also largely interested. The bankrupt's business was conducted principally by Posner.

The Bartling Tire Company, a Missouri corporation, with headquarters at St. Louis, was engaged in the business of buying and selling automobile tires. E. T. Bartling, its president, was in Birmingham about the middle of November, 1921, and while there offered to sell some tires to the Posner Company. Posner stated that his company was not financially able to purchase tires in large quantities. Bartling replied that he would ship a carload of tires and retain title in the Bartling Company. Steiner was interviewed, and he stated that the only safe way for the Bartling Company was to ship on consignment.

Bartling returned to St. Louis. On November 23 he wrote to the bankrupt that his company had completed arrangements for a chain of stores, and that he would ship a carload of tires to the bankrupt within the next few days, and that when this shipment was made he would write a letter, explaining how the transaction would be handled, "as outlined in my conversation with you and your Mr. Steiner." November 29, Posner acknowledged receipt of this letter, and wrote that he would appreciate the shipment of a carload of tires, and that he believed "it would be a good idea if you would include me a good assortment of tubes in this car." December 5, appellant wrote to the bankrupt that a carload of tires would be shipped on that day, and that it was inclosing a trade acceptance, which it requested the bankrupt to sign and return immediately, and stated:

"It is understood in connection with this shipment, as per conversation with your Mr. Steiner, these trade acceptances are to run for 90 days, and you are to make payments on same as you sell the merchandise, direct to our bank at St. Louis, namely, Jefferson Gravois Bank, * * * and we will at all times send you merchandise to take the place of goods you have sold," etc.

Later during the same day the appellant prepared, signed, and mailed a so-called supplemental agreement, which refers to the letter of that date, and in which it is provided that the tires are to be the property of the appellant, and are shipped only on consignment. This instrument was executed by Bartling, as president, and witnessed by E. E. Vietmeier, on behalf of appellant, and by Posner, as president, and witnessed by Arlie Barber, on behalf of the bankrupt. Miss Vietmeier was the secretary of the appellant, and Barber was attorney for the bankrupt. It was mailed by mistake to the Tuscora Rubber Company, at Cleveland, Ohio, but was forwarded by that company to the bankrupt. The tires were worth in excess of $11,500 and were shipped to appellant, "order notify" the bankrupt. The bill of lading was indorsed and mailed to the bankrupt. A trade acceptance was signed and returned by the bankrupt as requested, and was deposited by the appellant as collateral security with a bank in St. Louis. The bank-

rupt was to retain any profits realized upon sales above the invoice price.

The day after the petition in bankruptcy was filed, appellant made an informal application to the referee for the return to it of the unsold portion of the tires which it had shipped. The bankrupt's file of correspondence with appellant was before the referee, and it then contained appellant's letter of December 5. During the hearing that letter was on the table; and the referee looked at it, and ordered it restored to the file and delivered to the receiver. At the formal hearing on his petition, Bartling produced it when requested to do so, and at a second hearing produced appellant's file of correspondence with the bankrupt.

The tires contained marks of identification, and a record was kept of such of them as were sold. Appellee offered no evidence.

[1] Appellant's right of recovery is not affected by the laws of Alabama relating to foreign corporations doing business in that state. Barr v. State, 10 Ala. App. 111, 65 South. 197. So much was practically conceded at the argument.

[2] Appellant was entitled to recover the goods if they were shipped on consignment, and also to have assigned and delivered to it the accounts of goods which had been sold on credit. Ludvigh v. American Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345; McElwain-Barton Shoe Co. v. Bassett, 231 Fed. 889, 146 C. C. A. 45; Bransford v. Regal Shoe Co., 237 Fed. 67, 150 C. C. A. 269; Collier on Bankruptcy (1921 Ed.) 1148.

The petition should not be denied by reason of the fact that the bankrupt's trade acceptance was deposited in a bank as collateral security for appellant's note. Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828; 24 R. C. L. 447. The relief prayed can be granted upon condition that the trade acceptance be surrendered to the trustee. Full protection can thus be afforded to the bankrupt estate.

[3] Upon the facts the referee found that the evidence as to consignment was false, and reached the conclusion that there was an absolute sale. We are unable to agree to this finding and conclusion, notwithstanding they were sustained by the District Judge. The principal ground relied on to reject the uncontradicted evidence on appellant's behalf is that the letter of December 5 was produced by Bartling at the formal hearing. From that single circumstance it is inferred that the correspondence as a whole would have shown a sale, instead of a consignment, and that therefore Bartling abstracted such correspondence. But the undisputed evidence shows that the entire file of correspondence was before the referee at the informal hearing, held the day after the petition in bankruptcy was filed, at which the particular letter afterwards produced by Bartling had become separated from the file, and the referee ordered it delivered to the receiver. It was but natural that Bartling would submit, in support of his informal application, the correspondence between the appellant and the bankrupt. The letter in question was important to him, because it was made a part of the supplemental agreement by reference, and in itself was consistent with other evidence tending to show a consignment instead of a sale. No suspicious circumstance is pointed out or suggested in

connection with appellant's file of the same correspondence. But if the single circumstance relied on is sufficient to impeach Bartling's testimony, it would not have that effect upon the testimony of the officers of the bankrupt, according to which the shipment of goods was upon consignment.

The interest of Steiner, both as a stockholder in the bankrupt corporation and as a creditor, was distinctly antagonistic to appellant's claim. The testimony of both Posner and Steiner is positive, clear, and unimpeached, and cannot justly be ignored. There is nothing unreasonable or incredible in the uncontradicted evidence submitted on behalf of appellant; on the contrary, it appears to us to be reasonable. The bankrupt did not order any goods. In one letter it merely suggested that an assortment of tubes be shipped. If a sale of the goods had been made on credit, there was no reason for the shipment to have been consigned to the appellant. The requirement that the proceeds from the sale of the goods should be applied immediately upon the trade acceptance, clearly indicates that the goods were not sold upon usual terms of credit. An investigation would have disclosed that the bankrupt had available assets of less than $1,000, which were mortgaged to one creditor for more than $4,000. The evidence shows that such investigation was made. It is not to be assumed that Bartling would have sold goods of the value of $11,500, without investigating, or having knowledge of, the financial standing of the purchaser. Ordinary business prudence would have suggested the retention of title in any large business transaction with the bankrupt.

We are of opinion that full justice will be done by granting the prayer of the petition upon the surrender of the trade acceptance, and that such a decree should be entered.

The decree of the court below is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.