JOHNSON v. STAPLE COTTON CO-OP. ASS'N *et al.**

(Division A. Jan. 4, 1926.   Suggestion of Error Overruled Feb. 15, 1926.)

[107 So. 2. No. 25111.]

EQUITY. *Bill by member of association against it and insurance company held for accounting, and not multifarious.*

Bill by cotton grower against a co-operative cotton association, and an insurance company, *held* one for an accounting, with discovery as an incident thereto, on a policy procured by association as trustee and sales agent for itself and grower members, of whom plaintiff was one, and so not multifarious, though praying for alternative relief and alleging alternative liability.

*Corpus Juris-Cyc. References: Equity, 21 CJ, p. 424, n. 48.

APPEAL from chancery court of Leflore county.

HON. C. L. LOMAX, Chancellor.

Suit by J. N. Johnson against the Staple Cotton Co-operative Association and another. Demurrer to bill sustained, and plaintiff appeals. Reversed and remanded.

*Wells, Stevens & Jones* and *Forrest G. Cooper,* for appellant.

The subject-matter of this suit is the value of eighty-six bales of long staple cotton destroyed by fire. The cotton had been grown by the complainant, J. N. Johnson, under contract to be sold and delivered to the Stap' Cotton Co-operative Association. Under the terms ·

the marketing agreement, made an exhibit to the bill, the cotton at all times was association cotton. From the moment it was planted in the fields until actual delivery should be made to the association, the cotton was its property. *Brown* v. *Staple Cotton-Ass'n,* 132 Miss. 859, 96 So. 849.

The next important consideration is the allegation of the bill of complaint that the association insured this cotton not only for the benefit of the association itself but for the benefit of the grower members. A true copy of the policy of insurance is attached to the bill and speaks for itself. The policy is a so-called "open" policy. It attaches to cotton in gins and before it is even baled. It attaches to cotton located in gin yards. It attaches to cotton on gin platforms adjacent to gins. The bill shows, and the demurrer admits, that the cotton here in question was ginned by him at his own ginnery, and placed on the platform in bales, and, therefore, expressly and beyond doubt, comes within the terms of the policy.

*The bill is not multifarious.* The best answer to the argument that the bill is multifarious or that disconnected claims or equities are sued for against different defendants, is the splendid brief of Gwin & Mounger in *Jones* v. *Jones,* 99 Miss. 600, 55 So. 361. In the joint brief on file by Gwin & Mounger and Judge .Tim E. Cooper, 99 Miss. at 606, will be found collated the following authorities, which are directly applicable to the case at bar: *Garrett* v. *Miss. & Ala. R. R. Co.,* Freeman's Ch. Rep. 70; *Martin* v. *Pleasants,* S. & M. Ch. Rep. 17; *Wright* v. *Sheldon,* S. & M. Ch. Rep. 339; *Nevitt* v. *Gillespie,* 1 How. 108; *Delafield* v. *Anderson,* 7 S. & M. 630; *Butler* v. *Spann,* 27 Miss. 234; *Snodgrass* v. *Andrews,* 30 Miss. 472; *Forniquet* v. *Forstall,* 34 Miss. 96; *Thomas* v. *Thomas,* 45 Miss. 263; *McGowan* v. *McGowan,* 48 Miss. 453; *Jones* v. *Foster,* 50 Miss. 52; *Waller* v. *Shannon,* 53 Miss. 500; *Taylor* v. *Smith,* 54 Miss. 84; *Bishop* v. *Rosenbaum,* 58 Miss. 84; *State* v. *Brown,* 58 Miss. 835; *Barry* v. *Barry,* 64 Miss. 712; *Gardie* v. *Bul-*

*ger,* 66 Miss. 577; *Georgia P. Ry. Co.* v. *Brooks,* 66 Miss. 583; *Henry* v. *Henderson,* 79 Miss. 454; *Mosely* v. *Larson,* 86 Miss. 288; *Thames* v. *Mangum,* 87 Miss. 575; *Columbus Ins. & Banking Co.* v. *Humphreys,* 58 Miss. 258; *Robert* v. *Starke,* 47 Miss. 263; *Darcey* v. *Lake,* 46 Miss. 109. See also 21 C. J., p. 415; *Neylans* v. *Burge,* 14 S. & M. 201; 1 Pomeroy (4th Ed.), par. 113; *Middleton* v. *Howell,* 127 Miss. 880; *Roberts* v. *Burwell,* 117 Miss. 451, 78 So. 357. The last case holds that if two or more complainants assert interests which have a common origin, or radiate from the same center, or have a common connecting link, then equity may retain jurisdiction even though the court would be compelled to write separate decrees in favor of the several complaining parties; and by the same token under the same general rules of equity, if the defendants have interests, or any kind of liability which radiates from the same center or has a common connecting link, or if they are at all interested in the subject-matter of the suit, then equity has jurisdiction to adjudicate the liabilities of the defendants, although it requires the rendition of separable judgments; and it makes no difference in equity whether the parties interested in the same subject-matter appear as complainants or defendants.

So we say in the case at bar that the defendant, the Cotton Association, could have joined with the complainant Johnson in asserting liability against the Globe & Rutgers Fire Insurance Company for the one value of the cotton involved in this suit. The court should not overlook the fact that the bill in this case prays for a discovery, and discovery alone is one of the legal grounds of equity jurisdiction. If the association has received anything from the fire insurance company for the cotton destroyed by fire, then Mr. Johnson has an equitable interest in these proceeds, and should be reimbursed. Furthermore, if the insurance has been paid to the association, this is an important inquiry and factor in determining the liability of the insurance company, for it cannot be successfully denied that if the insurance company

has paid the loss either to the association or to Mr. John-son, its liability is at an end.  The bill alleges that the complainant has no knowledge and cannot obtain knowl-edge on this point except by discovery.

Again, if the association is liable to Johnson for this cotton regardless of whether it carried insurance or not, then it has a right to pay Johnson for his cotton and keep the insurance money in its own treasury for the ben-efit of all grower members and to recoup the loss sus-tained by the fires.  In other words, Johnson is entitled to but one recovery and the defendants are liable for but one payment.  It is a three-cornered controversy, there-fore, in which every party to this suit is vitally inter-ested, and beyond question equity has jurisdiction to adjudicate the respective claims and interests.  It makes no difference whether we rgard this as a suit for insur-ance money or a suit for the value of the cotton, it is all a suit for the same amount of money—call it what you will.  *Petree* v. *Lansing,* 66 Barb. (N. Y.) 357; *McIlvoy* v. *Alsop,* 45 Miss. 365; *Berry* v. *Bacon,* 28 Miss. 318; *Foster* v. *Jones,* 19 So. 893; *Comstock* v. *Rayford,* 1 S. & M. 423, 40 Am. Dec. 102; *Freeman* v. *Guyon,* 11 S. &. M. 69; *Richardson* v. *Brooks,* 52 Miss. 123; 5 Pomeroy, par. 2314; 21 C. J. 315; *Fidelity & Deposit Co.* v. *Wilkin-son County,* 106 Miss. 654; *Wright* v. *Lauderdale County,* 71 Miss. 800.

Applying the principle reflected by the foregoing au-thorities, we submit that all the parties here are inter-ested in the one controversy as to whether the complain-ant is entitled to discovery and whether he is entitled to the insurance money, and if there is one common ground or issue, then the parties are properly joined, even though the interests of the defendant are separate and distinct.

*The relationship of the association to every grower member.*   This relationship is contractual.  We contend, first, that this cotton was bought outright by the associa-tion; and when it was grown, ginned, baled and put up-on the gin platform ready for actual shipment, it was a constructive delivery which makes the cotton the prop-

erty of the association.   Under the allegations of the bill,
the association took charge of the cotton that was sal-
vaged; or, in other words, the association has treated
this cotton as belonging to the association, first, by hav-
ing samples of the cotton submitted after the fire and the
loss investigated; second, by taking charge of the bales
that were damaged and disposing of them as associa-
tion cotton.   The association, therefore, is estopped to
deny that the cotton was not actually delivered.   In the
third place, the association had insured this cotton for
its own benefit and is protected by the insurance, and
should be held to the utmost good faith.   Certainly the
association is either a purchaser or a trustee or agent
coupled with an interest.   *Oregon Growers' Co-operative
Ass'n* v. *Lentz,* 212 Pac. 811; *Ex parte Baldwyn County*
v. *Producers' Corp.,* 203 Ala. 345, 83 So. 69; *Hood River
Orchard Co.* v. *Stone,* 97 Ore. 168, 191 Pac. 662; *Phez Co.*
v. *Salem Fruit Union,* 201 Pac. 222, 25 A. L. R. 1090;
21 R. C. L. 823; 3 R. C. L. Supp. 1193.

*Where the complainant has a right to discovery, eq-
uity has original jurisdiction and in doing so will admin-
ister full relief although purely legal questions may be
involved.* Woods v. *Riley,* 72 Miss. 73; 1 Pomeroy, Eq.
Jurisprudence (4 Ed.), p. 190, *et seq.; Millsaps* v. *Pfeiffer,*
44 Miss. 805; *Buckner* v. *Ferguson,* 44 Miss. 667; *Lum-
ber Yard* v. *Railroad Co.,* 96 Miss. 116, 50 So. 445, Ann.
Cas. 1912 A  801; *Bomer Bros.* v. *Warren County,* 103
Miss. 343.

*The right of beneficiary under an insurance policy to
recover by suit in his own name although not directly a
party to the contract of insurance.*   The policy contract
on which this suit is based is written by the Globe & Rut-
gers Fire Insurance Company and indemnifies the Staple
Cotton Cooperative Association and legal representa-
tives.   The policy recites that it covers cotton of the
assured association and its members.   14 R. C. L. 1366;
*Bradley* v. *Brown,* 78 Neb. 836, 13 L. R. A. (N. S.) 152.
The case at bar comes clearly within the rule showing
that the policy sued on covers the cotton owned by the

Staple Cotton Association and its members, thereby putting the insurance company on notice that others besides the association were interested in this cotton and thus this suit is rightfully brought by Mr. Johnson, who was at that time one of the members of the association and clearly within the policy.

In Joyce on the Law of Insurance, section 3610, the general rule is that action upon policies of insurance is generally brought in the name of the assured, *unless others are also named in the policy as parties intended to be insured,* citing *Ward* v. *Wood,* 13 Mass. 539. See also *Ins. Co. of North America* v. *Forcheimer,* 5 So. 870; *Perry* v. *Ins. Co.,* 25 Ala. 355; *Wilson & Co.* v. *Hartford Fire Ins. Co.,* 254 S. W. 266 (1923); *Week* v. *Hamberg Brennan Fire Ins. Co.,* 133 N. Y. 194; *Week* v. *London Fire Ins. Co.,* 116 N. Y. 114; *Smolensky* v. *Mass. Bonding & Ins. Co.,* 198 N. Y. Supp. 376.

The demurrer of the defendant raises the question of where a contract made between two parties based upon a valid consideration may be enforced by third parties when entered into for their benefit even though such third parties are not named in the contract. This rule of law has been well settled in the affirmative, not only by the general law, but also by numerous Mississippi cases. 6 R. C. L., sec. 271. See, also, *Canada* v. *Y & M. V. R. R. Co.,* 101 Miss. 274, 57 So. 913; *Sweatman* v. *Parker,* 49 Miss. 19, 30 Cyc. 65; *Barnes* v. *Jones,* 111 Miss. 337.

The general rule in Mississippi is to allow a party to sue though he may not be the party with whom the contract was made, if the contract was made for his benefit. This rule is exemplified in cases where the sendee of a telegraph message is allowed to sue the telegraph company for any damages suffered by the sendee on account of any neglect of the company. *Shingleur* v. *Western Union Tel. Co.,* 72 Miss. 1030; *Western Union* v. *Allen,* 66 Miss. 549; *Wells* v. *Postal Tel. Co.,* 82 Miss. 733; *Western Union Tel. Co.* v. *Jackson,* 50 So. 316; *Waters* v. *M.*

*& O. R. R. Co.,* 74 Miss. 534; *A. & V. R. R. Co.* v. *Pounder,* 82 Miss. 568.

Johnson laid all of his cards on the table and accepted the advice not only of the officials but of the attorney for the association, and attempted to follow that advice. The association should now be estopped from raising any question either that the cotton was not association cotton or that the association did not have valid insurance. The association by its charter powers, by the law of the land, and by the contract has every advantage of the individual. It has the remedy of injunction, specific performance and liquidated damages. It can peremptorily invoke the aid of equity to restrain and compel the individual to submit to the will of the majority. The association in a real sense is a trust and combine, although a valid one. It ought not to run rough-shod over the helpless individual. The equities are with the complainant.

*R. C. McBee, S. L. Gwin* and *C. B. Snow,* for appellees.

The complainant has filed as the basis of his suit a copy of the marketing agreement of the association, which is his only contract with the association. His suit is based upon that contract and not in avoidance of it. If he recovers against the association at all, it must be by reason of the express terms of the contract. The demurrer, of course, admits the contract and all the material facts well pleaded in the bill, but it does not admit the conclusions of the pleaders. These are denied by the demurrer.

While a demurrer admits all material facts, "it does not admit, even for the sake of the argument, the conclusions of law to be such as the complainant contends, nor does it admit any mere inferences, or deductions of fact, although such inferences might be drawn from the facts set up in the bill." Griffith's Miss. Ch. Practice, sec. 288; *Tennett et al.* v. *Barksdale et al.,* 3 So. 80; *Partee* v. *Kortrecht,* 54 Miss. 66; *State* v. *Bell,* 58 Miss. 823-825; *Thames* v. *Mangum,* 87 Miss. 575-579.

It therefore follows that by the demurrer the allegation that the cotton in controversy was association cotton and belonged to the association by the terms of the contract is denied. The demurrer denies the allegation that the cotton was equitably in the possession and ownership of the association, and that it was located at its risk on the gin yard, and also denies the general allegation that Johnson had kept and performed all the covenants and agreements required of him by the association. The fact that the demurrer admits is that Johnson had ginned and baled his cotton and "placed it on the gin platform subject to the instructions and orders of the association." His contract required him "after picking and ginning to deliver his cotton to the order of the association at a warehouse." Delivery at a warehouse was required, to the order of the association, and in addition to such a delivery, he was required by his contract to accompany such delivery "with endorsed warehouse receipts or bill of lading properly directed."

In the present case, we see that Johnson had a contract with the association which imposed no liability whatsoever on it, as long as his cotton remained on his gin platform; and because he had such a contract, he cannot recover in any lawsuit which attempts to impose a liability by reason of the destruction of his cotton by fire. Johnson's position, however, would be no better if he had actually delivered the cotton to the association in accordance with his contract. He could not, by its terms, demand of the association the proceeds of the sale of his cotton, nor could he demand of it any insurance that may have been received by it on account of its destruction. The first act that is required of the association when cotton is delivered to it is that the association "shall pool or mingle the cotton of the grower with the cotton of a like quality, grade and staple delivered by other growers." As any cotton is delivered to the association it becomes a part of the stock of cotton on hand held by the association for sale, and thereafter as the cotton is sold, the sales are made from the pools, and by

contract "the net returns therefrom, less all costs, advances, and charges shall be credited and paid to him (the member) on a proportional basis out of the receipts of the sale of all the cotton of like grade, quality and staple."

By the contract the association never undertook to pay what it received for his cotton, and if it took his cotton and paid him nothing, by his bill for discovery, he can only seek to recover the amount of money received by the pool, and then his "proportional basis" out of the receipts from the sale of all of such cotton in the pools. *Burley Tobacco Soc.* v. *Monroe*, 146 S. W. 725-730, 148 Ky. 289. To give the marketing agreement any other construction would be to make of the association simply a cotton factor, liable to account to its principal for the proceeds of his cotton. Steen's Co-operative Marketing, ch. 30.

Business forethought and prudence, and not the contract, require that the association insure the cotton of its members. It had the right to do so under its contract. The members not only agreed that their cotton should be pooled, but that the proceeds should be divided into three funds.

The association can never sell burned cotton. That is physically impossible. What it receives in lieu of burned cotton must take the place of burned cotton in each pool; therefore, the insurance money when collected, belongs not to any individual member, but to the pool in which his cotton was placed.

*Can this case be based on discovery alone?* If all the elements of discovery appeared in the bill, it could not be contended that this court had jurisdiction by reason thereof. The bill expressly waives answer under oath. "If answer under oath be waived, it will not be a bill of discovery and will not support the jurisdiction if there be not other equity in the case." Griffith's Miss. Ch. Practice, 431. "While the bill states facts upon which a discovery could have been predicated, it waived that right to a discovery by waiving answer under oath,

so no feature of discovery is involved in this litigation.''
*Gulf, M. & N. R. Co.* v. *Hill Mfg. Co.*, 127 Miss. 644, 661.

*Is the bill multifarious as to subject-matter?* Section 358, Hemingway's Code, provides for ''the uniting in one bill of several distinct and unconnected matters of equity against the same defendants.'' See *Roberts* v. *Burwell,* 117 Miss. 469; 27 Cyc. 342. Counsel have cited many cases but we submit, no case like this. Equities are not here asserted, but rights growing out of separate contracts.

The question of liability for money received from the proceeds of insurance does not arise under this bill. One cannot read the bill and ascertain which of the defendants is liable. In order to join these defendants he must point out other and joint liability, or show which one is liable. It therefore follows that this bill is a ''fishing bill,'' which cannot be maintained. Griffith's Miss. Ch. Practice, sec. 173; *George* v. *Solomon,* 71 Miss. 168, 14 So. 529.

We have no quarrel with the rule announced by counsel that a principal may recover on a contract made by his agent for his benefit. The trouble here is that the insurance policy was not for the benefit of Johnson, but for the benefit of each and every member who had cotton in pools in which Johnson's cotton was contained. The demurrer does not admit the allegations of the bill to the effect that Johnson's failure to recover his specific insurance was because he was not the sole and unconditional owner of the cotton at the time he obtained the separate policies of insurance. This is his conclusion as to why he lost his lawsuit. This court has held in *Merchant Union Ins. Co.* v. *Johnson,* 135 Miss. 311, the reason that he lost that lawsuit was not because he was not the sole and unconditional owner, but because the policy required him to keep a record of all the cotton in his gin. And the record kept by him was not kept as required, but was made up by him after the fire.

*Wells, Stevens & Jones* and *Forrest Cooper,* in reply, for appellant.

We desire, first, to take up for discussion the alleged pooling arrangement so much stressed by counsel. The contract before the court does not justify any conclusion that the grower member is without remedy to collect the value of any cotton which he has delivered under the contract to the association. The very function as admitted by opposing counsel of the cooperative marketing scheme is to enable the producer to sell his product at a favorable price and with as little expense as possible. The very scheme contemplates prompt remittance for the cotton taken in charge and disposed of. We are sure that no case can be found which would deny relief to the grower or producer for the value of his cotton. There are cases between growers and associations upholding the right to an accounting. *Steelman* v. *Oregon Dairymen's League,* 97 Ore. 535, 192 Pac. 790; *Hood River Orchard Co.* v. *Stone,* 191 Pac. 662; *Lake Charles Rice Milling Co.* v. *Pac. Rice Growers' Ass'n et al.,* 295 Fed. 246.

In the case at bar the association did not contract to be liable for loss sustained by fire. In the second place, the very contract between every member of the cotton association stipulates among other things that the association is "to pay over the net amount received, less freight, *insurance,* and interest." And the policy contract of insurance, in question, shows on its face that it was taken out by the association for the benefit of Johnson and every grower member of the association. Therefore, neither the text in R. C. L. nor *Bradley* v. *Brown,* applies. Neither counsel nor any member of this court can find a case denying the right of a principal to recover insurance taken out by the agent where the policy contract shows on its face the agency and especially where the consideration or premium is to be charged against the principal as in the case at bar. Any insurance taken out in the form reflected by the exhibit to the original bill makes every grower member of the association the beneficiary, with an insurable interest and entitled to re-

cover any loss protected by the policy contract. This is not only the law but common sense and justice. *Hearparinne* v. *Butter Hill Fruit Growers' Ass'n*, 122 Me. 138, 119 Atl. 116; 33 A. L. R. 247, a case note on cooperative marketing with several cases throwing light on the general principles involved in this case.

We believe that no ground of demurrer challenged our right of discovery because answer under oath had been waived. We note Mr. McBee's quotation of Chancellor Griffith in Miss. Ch. Practice, 431 and the extract from *Gulf M. & N. R. Co.* v. *Hill Mfg. Co.*, 127 Miss. 644 in *Palmetto Fire Ins. Co.* v. *Allen*, 105 So. 482 (1925), expressly holding that if a bill for discovery waives answer under oath, such waiver destroys the efficacy of the answer and subjects the bill to attack by way of demurrer This question was not the main question at issue in *Gulf M. & N. R. Co.* v. *Hill Mfg. Co., supra,* which is the only case which supports the statement of Judge Griffith in his text. We submit that the case of *Palmetto Fire Ins. Co.* v. *Allen, supra,* is an erroneous conclusion, that the Court In Banc should settle this question to the contrary and that section 345, Hemingway's Code, confers a right by statute upon the complainant in his bill to waive an answer under oath.

McGOWEN, J., delivered the opinion of the court.

Appellant, J. N. Johnson, filed his bill against appellees, Staple Cotton Co-operative Association and Globe Rutgers Fire Insurance Company, seeking to recover from defendants the sum of twelve thousand seven hundred sixty-eight dollars and forty-five cents for the loss by fire of eighty-two bales of cotton located on his gin yard. The bill alleges that Johnson was a member of the association organized under the laws of the state of Tennessee, a nonstock corporation, organized for the purpose of buying and selling cotton; an association of cotton farmers operating mainly in the Mississippi Delta and delta portions of other states; that all the members of said association had entered into a contract, which was

in force during the year 1922 while the plaintiff was a member of said association; and that the eighty-two bales of cotton totally destroyed on the 17th day of September, 1922, by fire, were of the market value of fifteen thousand eight hundred sixty-five dollars and fifty cents, which the association had agreed to buy and the complainant had agreed to sell and deliver in accordance with the terms of the contract. He further averred that he performed all of his agreements under the contract; that he had grown the cotton on his plantation, had the same ginned and baled and placed on a gin platform at Holly Ridge, Sunflower county, subject to orders and instructions from the association; that the said cotton was association cotton, and when grown, ginned, and baled, belonged to the association; and that by virtue of the marketing agreement, or contract, when so ginned and baled the association became the equitable owners and obligated to pay the complainant the purchase price which the association received for said cotton, less freight, insurance, and less two per cent. of the gross proceeds of the sale of the cotton levied to create an advance fund for the grower members of the association.

Plaintiff further alleged damage to four bales of cotton not totally destroyed, and that these four bales of cotton were taken over by the Staple Cotton Co-operative Association. In furtherance of its co-operative scheme and for the protection of its grower members, a blanket or floating policy of insurance was alleged to have been issued covering the actual cash value of all the cotton in the possession or under the control of the association under any of the contracts which the association had with its grower members; that said insurance policy covered cotton in bales owned by the Staple Cotton Co-operative Association, or its members, or was at their risk while located in gins, on gin yards, or on platforms adjacent to gins in the states of Mississippi, Arkansas, and Tennessee. A copy of the insurance policy was made an exhibit to the declaration, which was in full force and

effect from the 1st day of September, 1922, to the 1st day
of September, 1923, and it was charged that the policy
was in effect at the time the cotton above mentioned was
destroyed by fire and that the policy was intended to and
did cover said cotton. It was alleged that the association
had advertised that all of its members who agreed to grow
cotton for its benefit would be protected against loss or
damage by fire, and that this insurance was an induce-
ment for joining said association.

The bill further charged that several policies of in-
surance had been taken by him on this cotton in his name
and for his separate protection and benefit; but that same
had been declared by the courts to be legally void, though
he had collected about three thousand dollars on a com-
promise with one of the companies. The bill further
stated that the association had acknowledged its knowl-
edge of the fire and of the loss; that its agent was pres-
ent during the fire; that at the request of the association
he delivered samples of the cotton to the office of defend-
ant; that he was advised by the general attorney to de-
mand payment from the insurance companies of the pol-
icies issued to him separately; and that it was then and
there represented to him and promised to him that the
association would protect him against loss. It is further
alleged that there was some kind of understanding be-
tween the two defendants, the association and the fire
insurance company, the terms of which were not known
to the complainant; nor was it known whether he had
collected the insurance or not, but that it was the duty
of the association to report said loss and demand pay-
ment of the insurance and to collect same for the account
and benefit of the complainant, as a cotton grower mem-
ber of said association.

The bill charged that the complainant was entitled to
a discovery from the defendants as to whether there had
been an adjustment of the loss, and as to whether any-
thing had been collected, and that the information was
within the peculiar knowledge of the defendants; that it

was the duty of the defendant association to demand of the defendant fire insurance company the payment of his loss by fire on this cotton, and that if the association had not so collected said insurance that the association had been guilty of gross negligence to the extent of the total sum of the damage. The bill further charged that the association held the proceeds, if collected, as trustees, and that the proceeds should be so accounted for; further charging that he was the beneficiary under the policy of insurance, in effect that it was the duty of the association, as his trustee, to take all steps necessary to the administration of the fund under the contract between the grower member and the association, and under the terms of the fire insurance policy. The bill further charged that the insurance, together with other expenses for handling cotton, was charged against the members, and was a part of the general scheme of co-operation; that also the association had recognized its liability and ratified its obligation to take his entire crop even if it had been destroyed or damaged by fire, by its acceptance of the four damaged bales of cotton. The bill further charged that if the defendant association had negligently failed or refused to make proof of the loss, or had in any manner placed itself in an attitude where recovery cannot be had of and from the insurance company, then that the association should be held in equity to account for the true value; that whatever delay in making proofs had been occasioned, if any, was not the fault of the complainant but was the fault of the association.

After praying for process, the prayer of the bill is as follows:

"(2) That the defendant association in its answer be required to disclose whether notice and proof of loss has been given or made to the Globe & Rutgers Fire Insurance Company, and whether any insurance has been collected for the loss or damage to the cotton, which your complainant produced for the association, as outlined in the foregoing bill.

"(3) That if the defendant association has collected any proceeds of said insurance covering the cotton produced by your complainant as aforesaid, then the said association be made to account to your complainant for the amount of said insurance.

"(4) That in event the association has not collected any insurance for the account of your complainant, or if said association has not collected the full amount of the damage or loss sustained by your complainant in said fire, your complainant be awarded a personal decree against the defendant the Globe & Rutgers Fire Insurance Company for the actual cash value of all cotton lost or destroyed by said fire, and the actual amount of its damage to that partially damaged by fire.

"(5) That the defendant association be held personally liable to your complainant for the true market value of all cotton produced by your complainant for the association as charged in the bill, regardless of whether your complainant is entitled to recover from the Globe & Rutgers Fire Insurance Company or not.

"(6) That complainant be awarded a personal decree against the defendants jointly and severally for the actual value of his cotton and damage thereto, as aforesaid.

"If complainant has not prayed for the right relief, or if complainant has prayed for the right relief in the wrong way, or if complainant has prayed for insufficient relief, then your complainant prays for general relief in the premises, and as in duty bound he will ever pray," etc.

As a part of the declaration we quote excerpts from the Staple Cotton Co-operative Association's marketing agreement, the first clause of which is as follows:

"The grower is a member of the association and is helping to carry out the express aims of the association for co-operative marketing, for minimizing speculation and waste and for stabilizing cotton in the interests of the

grower and the public, through this and similar obligations undertaken by other growers.''

Section 2 of the agreement is an agreement of the association to buy and the grower to sell and deliver all cotton produced or acquired by the grower, Johnson, during the years 1920 to 1924, inclusive.

''Section 3. The grower expressly warrants that he has not heretofore contracted to sell, market or deliver any of his said cotton to any person, firm or corporation, except as noted at the end of this agreement. Any cotton covered by such existing contracts or crop mortgage shall be excluded from the terms hereof for the period and to the extent noted.

''Section 4. (a) All cotton shall be delivered at the earliest reasonable time after picking or ginning, to the order of the association, at the warehouse controlled by the association; or at the nearest public warehouse, if the association controls no warehouse in that district; or by shipment as directed to the association, and by delivery of the endorsed warehouse receipts or bills of lading properly directed.

''(b) Any deduction or allowance or loss that the association may make or suffer on account of inferior grade, quality or condition at delivery, shall be charged against the grower individually.

''(c) The association shall make rules and regulations and provide inspectors or graders, or classifiers to standardize, grade and class the quality and method and manner of handling, pressing and shipping such cotton, and the grower agrees to observe and perform any such rules and regulations and to accept the grading established by the state and federal authorities and the association.''

Sections 5 and 6 provide for the ''pooling'' of the cotton and for the payment of the net amount received, to the growers, less freight, insurance and interest, and for the payment of two per cent. into a general fund for the use of the growers.

Sept., 1925] Johnson *v.* Cotton Co-op. Ass'n. 329

142 Miss.] Opinion of the Court.

Section 7 provides that, although the grower may mortgage his crop, still the right to handle under this contract is vested in the association.

The agreement further provides that it is one of a series generally similar in terms, one single contract between the association and the growers mutually and individually obligated under the same terms; and that under its own name the association shall be deemed to be acting for all such growers in any actual legal proceedings on or arising out of this contract.

Exhibit B gives the numbers and weights of the bales of cotton; Exhibit C is a copy of the insurance contract issued by the Globe Rutgers Fire Insurance Company, what is known in the insurance world as an "open or floating policy," and recites a consideration of five thousand dollars for the term of one year from the 1st day of September, 1922, to the 1st day of September, 1923, at noon. And the printed form attached is as follows:

"Staple Cotton Co-operative Association,
Memphis, Tenn.
"Floater Policy Covering Cotton at Gins.

"1. This insurance covers cotton in bales owned by the Staple Cotton Co-operative Association and/or its members or at their risk while located in gins, on gin yards and platforms adjacent to gins, in the states of Mississippi, Arkansas and Tennessee.

"2. Liability under this policy to commence from the moment cotton has been ginned and baled and is legally at the assured's risk."

"4. It is agreed that this Company shall not be liable for more than fifty thousand dollars loss by any one fire or conflagration."

We do not deem it neccessary to set out the many pages contained in the bill and in the exhibits, but we have tried fairly to call attention to the essential statements therein in order that this decision may be understood.

To this the defendants filed separate demurrers.

The Staple Cotton Co-operative Association assigned twelve grounds, which may be grouped as follows: That the claim is asserted in the alternative, and that the prayers for relief are diametrically opposed, containing inconsistent, repugnant allegations, and the main ground alleged by appellee is that the bill is multifarious.

The insurance company filed a demurrer on three grounds: First, that there is no equity on the face of the bill; second, that the bill shows on its face that there is no privity of contract between complainant and the defendant; third, that the bill shows on its face that the policy of insurance upon which complainant bases his right of action is void as against this defendant for the reason that complainant has violated the provisions thereof.

We think the chancellor was in error in sustaining the demurrer to this bill. As we view the bill, it is one for an accounting for the value of eighty-two bales of cotton destroyed by fire, on a policy issued by defendant insurance company procured by the cotton association as trustee and sales agency for the use and benefit of itself and its grower members, and the form of insurance issued by the fire insurance company to the Cotton Growers' Association and to its members covered by its terms the cotton of the complainant situated at the gin of the complainant and subject to the orders of the association. The fact that the bill prays for alternative relief and alleges alternative liability as to the same cotton and as to the same fire in which, by contract, all the parties were interested, would not destroy the bill on account of multifariousness. On the allegations of the bill the subject-matter was the insurance on the cotton, in which complainant alleged that he was the principal owning an equity in the cotton, the cotton association being the sales agency under a contract absolute, unconditional, unreserved, and irrevocable, and the contract of insurance named the members of the association as being protected from loss or damage to cotton by fire in express terms.

A bill is not multifarious where an accounting is sought between the parties complainant and defendant, having a common interest therein. This court has held that this association is a sales agency operating for the benefit of its members. *Brown* v. *Staple Cotton Co-operative Ass'n,* 132 Miss. 859, 96 So. 849; *Cole-McIntyre-Norfleet Co.* v. *Du Bard,* 135 Miss. 20, 99 So. 474. It is true that Johnson was not named in direct terms in the floater policy of insurance issued by the defendant insurance company, but he was unquestionably one of a class named in said policy as being a member at the time; and the cotton destroyed by fire was on the gin yard, in the state of Mississippi, baled and ginned, and the assured is named in section 1 as the Staple Cotton Co-operative Association, or its members. But under the allegations of this bill this cotton was in the possession strictly and legally of the Staple Cotton Co-operative Association; and under the allegations of this bill Johnson had no defense to its right to place this cotton in its "pool."

The complainant Johnson had an insurable interest in this cotton. The association had an insurable interest in this cotton, "for the benefit of the pool" formed by it, and the insurance company wrote it into the contract that the *status* of the members of the association was recognized, and the consideration recited in the policy was certainly a valuable one; and to say that it would not operate for the benefit of the members would be to charge the association with a waste of the funds of the members who had contracted to pay the insurance if it were procured. An agent or a factor or a trustee has a right to insure the property of his principal, and if he does insure it the principal is entitled to recover.

In 14 R. C. L., p. 1366, the rule is stated:

"Where an agent in possession of personal property insures it against fire, the money due upon the policy after the loss belongs to his principal who may recover it directly from the insurance company and if it is paid

to the agent the latter holds it in trust merely for the benefit of the party ultimately entitled.''

The case of *Bradley* v. *Brown,* 78 Neb. 836, 112 N. W. 331, 13 L. R. A. (N. S.) 152, 126 Am. St. Rep. 647, holds that:

''Where a policy is issued on property 'held in trust' parol evidence is admissible to show who are the true owners.''

This policy clearly showed that the association and its members were the protected parties; and the language of the policy shows that the insurance company understood this trust relationship. So that the contract itself shows that there is privity of contract between the parties to this litigation because the Cotton Growers' Association had the same right to deal with this cotton as a part of the pool of the year 1922, and take therefrom its share of costs, insurance, and two per cent. just the same as if the cotton had been in its own main warehouse, and should be dealt with in the same manner and under the same conditions subject to the same charges, and the fact that this cotton belonged to the pool of the association makes this case peculiarly one for the intervention of equity in order that an accounting may be had between the association and its member, the complainant, and in order, in view of the language of, the policy, that the fire insurance company, if held to be liable, may have an acquittance of all liability by the payment of one fund at one time upon the decree of the chancery court, and that the rights of all parties may be adjudicated in one lawsuit.

Where a principal alleges his claim in a bill in equity against his sales agency and the insurance company, and this insurance is the subject-matter of the bill and divergent interests are alleged therein, so far as the defendants are concerned, though the rights of the defendants may be alternative or may be different, the bill is not multifarious. And in such a case every one having a right or interest in the subject-matter is a proper party to the bill.

Sept., 1925] Johnson *v.* Cotton Co-op. Ass'n.       333

142 Miss.]                    Opinion of the Court.

We do not think the allegations of this bill are inconsistent when viewed, as we view it, as a bill for an accounting filed by the principal against his factor or sales agency and against the insurance company who has undertaken by contract to indemnify against loss by fire the agent and all his principals. The real theory of appellees and the court below seems to be predicated upon the idea that the bill is multifarious.

It is clear that there is a common interest in the common subject-matter, and this court has so frequently announced that a demurrer would not be sustained on this ground in such a case that it seems unnecessary to cite the long line of decisions from the early history of this court down to this term, but we cite as aptly fitting the case *Roberts* v. *Burwell*, 117 Miss. 451, 78 So. 357, in which Chief Justice Smith said:

"Where the failure of each of the devisees to deliver to [Louis Roberts], which he or she was obligated by the will to do, constitutes a separate cause of action, nevertheless they may be joined in equity in one suit, for the reason that where the interest and liability of the defendants, though separate, flow from the same fountain, or radiate from the same center, or have a common connecting link, the joinder of such defendants and matters in the same suit is admissible."

See, also, Gibson's Suit in Chancery (2 Ed.), section 149; *Tribette* v. *Ill. Cent. R. R. Co.*, 70 Miss. 182, 12 So. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642; *Cumberland Telephone Co.* v. *Williamson*, 101 Miss. 1, 57 So. 559.

In Griffith's Chancery Practice, section 206, the author quotes from Gibson's Chancery Practice eight characteristics, all of which a bill must contain to render a demurrer effectual. This summary can also be found in Beach's Modern Equity Practice and in footnotes fourteen Enc. Pl. & Pr., p. 199, which we commend and approve.

So that we conclude that the bill is not multifarious, being a bill for an accounting with a prayer for discovery as an incident thereto; that there is privity of con-

tract between all the parties as shown by the pleadings and contracts; that equity is properly invoked in order that an accounting may be had along the lines agreed upon in the contract between Johnson and the association, and if the association and insurance company are held liable then the funds should be decreed to be handled as though this cotton had been "pooled" by the association along with the other cotton of its grower members. The fact that we have held this to be a bill for an accounting with discovery as an incident thereto answers the other objections raised by counsel for appellee in their brief in this case, except the third ground of demurrer by the insurance company which is not mentioned in their brief.

The chancellor erred in sustaining the demurrers to the bill herein, and this cause is reversed and remanded, the demurrers are overruled, and the defendants are allowed thirty days in which to file answer.

*Reversed and remanded.*