(134 So. 646)
## ALABAMA FARM BUREAU COTTON ASS'N v. DALE et al.

### 2 Div. 982.

Supreme Court of Alabama.
April 16, 1931.

Rehearing Denied May 28, 1931.

Steiner, Crum & Weil, of Montgomery, for appellant.

S. F. Hobbs, of Selma, for appellees.

**FOSTER, J.**

The action in this case is by appellee against appellant in trover, and for money had and received. Appellant is a nonprofit association organized under the laws of Alabama. Its purpose, the nature and legal effect of its dealings, are shown in our case of Warren v. Ala. Farm Bureau Cotton Ass'n, 213 Ala. 61, 104 So. 264. Its contracts were upheld in that case in line with the decisions of other states relating to marketing associations whose charter and nature of business seem to be substantially the same. 47 A. L. R. 936, et seq.; Tobacco Growers' Co-operative Ass'n v. Jones, 185 N. C. 265, 117 S. E. 174, 33 A. L. R. 247; Phez Co. v. Salem Fruit Union, 103 Or. 514, 201 P. 222, 205 P. 970, 25 A. L. R. 1113.

A marketing agreement was made between the parties. Article 5 (a) provided that the association shall pool or mingle the cotton of the grower with cotton of like quality, grade, and staple, delivered by other growers; 5 (b) provides that the grower shall have the right to require the association to resell as much as one-half of his cotton "either pooling the same or without pooling it with the other cotton as hereinbefore provided at the option of the association," and that the association will handle sales of such cotton in accordance with reasonable rules and regulations to be established by the board of directors from time to time. By virtue of this authority, the board of directors established rules and regulations as "Special Pool" cotton. The other cotton was designated as "Annual Pool" cotton.

The grower who wished to have a portion of his cotton accepted and handled under the rules and regulations pertaining to "Special Pool" cotton had the privilege of three options: (a) To sell his cotton as soon as possible; (b) to sell it on a future date, named; (c) to hold his cotton until such time as he gives instructions to sell. The rules and regulations applicable to the resale of special pool cotton were adopted by the board of directors, and they together with the pertinent provisions of the marketing agreement control the handling of cotton so designated by the grower.

For the purposes of this case we think it advisable to quote here certain portions of the rules so adopted, as follows:

"15. If the association makes more than one sale of special pool cotton on any day, the basis price received on all sales made during the day shall be averaged, so that each member whose cotton is sold on a certain day will receive the same basis price for cotton of the same quality as is received by all other members during that day. Provided however, that any member may make special arrangements with the association for the sale of a certain lot of his cotton without pooling the price with the price received for other cotton throughout the day on which the cotton is sold.

"16. The association shall determine the price on all cotton delivered to the special pool either by making an actual sale of cotton or by selling contracts through its subsidiary sales corporation on the New York or New Orleans or Chicago Cotton Exchanges, or in any other manner which it may consider advisable and proper. The basis and the differences in value of grades, staples and color may be determined by actual sale of cotton or may be determined by the association in any other manner that it may consider just and reasonable. The judgment of the association in determining all such matters shall be conclusive.

"17. After special pool cotton has been classed and its value determined as provided in paragraph 16 above, the association shall make settlement for such cotton by paying the value of same, less interest, if any, insurance, warehouse charges, any indebtedness to the association, and such other reasonable estimated charges and deductions as are provided for in section 6 of the Marketing Agreement.

"18. Such pool or pools as may be reasonably necessary or proper for handling cotton in accordance with these rules, are hereby created and established.

"19. The association will exert itself to make actual sales and shipments of special pool cotton as rapidly as sales are ordered by members, but as the policy of the association is to sell cotton in large lots direct to the mills, it will be impossible to keep orders from members to sell, and actual sales, in complete balance, but regardless of this, the association will always be in position to fix the price on any special pool cotton at any time by making use of hedges through its subsidiary sales corporation.

"20. To facilitate the physical handling, the actual bales of cotton may be interchanged at any time between pools, provided, however, that there shall at all times be in each pool the proper number of pounds of each grade of cotton or its equivalent in value."

And portions of the marketing agreement, as follows:

"2. The association agrees to buy and the grower agrees to sell and deliver to the association all of the cotton produced or acquired by or for him in Alabama during," etc.

"9. The grower agrees that the title to the cotton delivered hereunder shall pass absolutely to the association upon delivery."

"18. (b) * * * And the parties agree that this is a contract for the purchase and sale of personal property under special circumstances and conditions, and that the buyer cannot go to the open markets and buy cotton to replace any which the grower may fail to deliver."

Plaintiff designated the cotton in controversy in this case as special pool, option (c). In the course of time he ordered it sold. The association had previously sold substantially all of the actual cotton of plaintiff, and instead of selling his on that day sold other cotton of like amount, grade, and quality of which it had had possession during the intervening period.

Plaintiff contends that when defendant, without authority, sold the cotton which he had actually placed in its possession, it converted the same, and was liable in trover for its highest market value between that date and the date of the institution of the suit, or plaintiff could recover the purchase money received, in an action for money had and received. The court rendered judgment for plaintiff, but it does not clearly appear whether it was based upon a finding that a conversion had been committed or that it was for money had and received. The facts, which were settled by agreement, do not show the amount received for the cotton by defendant, nor its value on the day of sale, and it is not quite clear upon what exact basis the amount of the judgment was ascertained. But as we view the case it is not necessary to discuss that feature of it further.

Of this nature of contract, the Supreme Court of Texas says that "it was the manifest purpose of the parties that the Association should take title to the cotton delivered to it, and that defendant in error [that is the grower] should lose all dominion over it," and "to exercise all acts of ownership over the cotton after its delivery, subject only to the method prescribed for determining its price." Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S. W. 1101, 1107.

In Mississippi, the court holds that such a contract makes of the association a sales agent. Johnson v. Staple Cotton Co-op. Ass'n, 142 Miss. 312, 107 So. 2; Brown v. Staple Cotton Co-op. Ass'n, 132 Miss. 850, 96 So. 849; Cole, etc., Co. v. Du Bard, 135 Miss. 20, 99 So. 474.

But without undertaking to define the true relation, which partakes of the nature of several which are more or less distinct and different, it is quite clear to us that it was no violation of the contract by appellant, when it is considered as a whole, for the association to mingle the specially pooled cotton, and sell it indiscriminately from time to time, to comply with the orders of the growers, and pursuant to the regulations, provided there is on hand all the time subject to the order of plaintiff for sale under the special pool cotton of an equal amount and of equal grade and quality. As influencing this conclusion, we will refer to certain features of the regulations and agreement. We have quoted article 15 of the special pool. Under it, if more than one sale is made during any day, the basis price of all the sales is averaged, and, instead of the grower getting the actual price of his cotton, if his is actually sold, he gets the average price of sales made of specially pooled cotton. Under articles 16 and 17, when the grower orders his cotton sold, the association need not actually sell it nor any spot cotton for him, but may sell a contract on the exchange (New York or New Orleans or Chicago), and make settlement for his cotton at the price thus ascertained to exist on that day.

Articles 18, 19, and 20 show that it is not the contemplation of the parties for the association to sell the identical cotton of the grower when a sale is ordered by him, but that it may be pooled for proper handling (18), and it need not keep orders to sell and actual sales in complete balance, if it duly accounts for the proper value on the day when ordered sold, (19), and it may interchange the cotton between pools, if there is retained in each pool the proper amount of equal grade and value (20).

The facts do not show that the terms thus expressed were in any respect violated by appellant in handling the cotton of appellee designated for special pool, option (c). The only complaint is the contention that, though defendant kept on hand cotton of equal amount, grade, and quality, to satisfy the demands of plaintiff, and that, when plaintiff ordered his cotton sold, defendant did sell an equal amount of the same grade and quality, there was a conversion of the cotton of plaintiff, because his identical product was otherwise sold, some before and some after that date, and, though plaintiff sustained no loss by the transaction, he is nevertheless due to recover, not the value of the cotton on the day he ordered it sold, for he received that, nor on the day when his identical cotton was sold, but the highest value of such cotton after the day of its actual sale, because, in an action of trover, such amount may be recovered at the discretion of the jury (or court sitting without a jury). We cannot agree that the facts sustain a claim in trover nor for the purchase price received by the association when the identical cotton was

sold. Moreover, the facts do not show the price so received by the association.

Our conclusion is that the plaintiff was not due to recover anything on the pleadings and facts shown by this record, but that defendant was due to have judgment rendered in its behalf.

The judgment of the circuit court is therefore reversed, and one is here rendered for appellant.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.