No. 27,237.

The Kansas Wheat Growers Association, *Appellant,* v. Harry Massey, *Appellee.*

### SYLLABUS BY THE COURT.

Agriculture — *Renunciation of Associate Membership Induced by Fraud — Waiver by Exercise of Membership Privilege — Liability for Breach of Market Agreement.* Defendant became a member of The Kansas Wheat Growers Association in April, 1922. In July, 1922, he discovered the representations whereby he was induced to become a member were false. In the years 1922, 1923 and 1924 he did not comply with his marketing agreement with the association. In 1924 and 1925 he claimed and exercised privileges of membership in the association. *Held,* he is liable for breach of the marketing agreement.

Appeal from Edwards district court; Roscoe H. Wilson, judge. Opinion filed March 12, 1927. Reversed.

*T. A. Noftzger, George W. Cox, W. J. Masemore, Robert L. NeSmith,* all of Wichita, and *W. E. Broadie,* of Kinsley, for the appellant.

*Ray Campbell* and *J. Graham Campbell,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one to recover the stipulated damages of 25 cents per bushel for quantities of wheat which defendant

Agriculture, 2 C. J. p. 998 n. 31. Contracts, 13 C. J. p. 616 n. 99, 1. Monopolies, 25 A. L. R. 1113; 33 A. L. R. 247; 19 R. C. L. 195.

failed to deliver pursuant to his marketing agreement with the Kansas Wheat Growers Association. The defense was that he was induced to sign the marketing agreement by fraud. The court found for defendant, and rendered judgment accordingly. Plaintiff appeals.

Defendant's application for membership in the association reads as follows:

"The undersigned wheat grower hereby applies for membership in the Kansas Wheat Growers Association.

"The undersigned states that he has read the articles of incorporation, by-laws, original association agreement, and standard marketing agreement of the association; and that he understands and approves them, and accepts them as binding upon him in all their terms.

"The undersigned agrees to perform all of the obligations of. the by-laws and marketing agreement."

The marketing agreement was signed on the same day the application for membership was signed. The application was accepted, and defendant became a member of the association on April 15, 1922. On July 1, 1922, defendant discovered the representations made to him to induce him to become a member were false.. Although he produced wheat, he delivered none in the years 1922, 1923 and 1924. The action was commenced in January, 1925. The court stated the following finding of fact: ·

"No. 6. On September 20, 1924, defendant executed a proxy as a member of the Kansas Wheat Growers Association to C. O. Trower, authorizing the said Trower as his lawful attorney to represent him at the meetings of said association and vote thereat. Said proxy is plaintiff's exhibit 'E,' which by reference is made a part of this finding. Said defendant voted as a member of said plaintiff association at the primary meeting of said district No. 5 on May 5, 1925. The ballot cast by defendant was introduced in evidence as plaintiff's exhibit 'D,' and is by reference made a part of this finding."

Defendant endeavors to separate membership in the association from obligation to fulfill the marketing agreement. The nature of the relation of the Kansas Wheat Growers Association to its members has been considered in numerous cases. Its coöperative features were shown to be of the essence of the organization in the opinions in the cases of *Wheat Growers Association v. Schulte,* 113 Kan. 672, 216 Pac. 311, and *Wheat Growers Ass'n v. Sedgwick County Comm'rs,* 119 Kan. 877, 241 Pac. 466. In the Schulte case the court said:

"This association was organized for the sole purpose of marketing the wheat

raised by its members, and performing such functions as are incidental thereto. From the very nature of things it must have the wheat or it cannot exist. . . . Wheat is the only commodity the association can use as a going concern. All it can do with money is to pay its expenses and disburse the balance among its members." (p. 684.)

In the Sedgwick county case the court said:

"The association has indeed a legal entity of its own; it is a corporation, but not a corporation for gain; it may make and enforce contracts with its own members and with others; it may buy and sell, sue and be sued. But it seeks no profit for itself. It is a mere instrument through which the members undertake by concerted action to market their own crops. The members do not bargain with it over prices. The bond of membership binds each to the others to sell only through it, for in no other way can coöperation be enforced. The members are the association in a fuller sense than the stockholders of a corporation having capital stock are the company. The rights acquired by the association with respect to the wheat are held for the benefit of its members. They are the real owners, while it has possession, control, and the power of sale, exclusive and irrevocable." (p. 879.)

The result is, membership and marketing are fused elements of the coöperative scheme. Because the bond of membership binds each member to the others to sell only through the association, to affirm membership is to affirm obligation to fulfill requirements of the marketing agreement, and obligation to fulfill requirements of the marketing agreement may not be denied by one who asserts membership and exercises privileges of membership by participating in the corporate activities of the organization.

The proxy which defendant signed read as follows:

"Know All Men by These Presents, That we, the undersigned, members of the Kansas Wheat Growers Association, hereby constitute and appoint C. O. Trower as our true and lawful attorney to represent us at all meetings of the members of the said association, and for us and in the name and stead of each of us to vote thereat, and we hereby respectively grant to our said attorney all the powers that we should possess if personally present at such meetings.

"We understand that petitions are now being circulated for a meeting or meetings on the subject of dissolution, termination of certain operations of the association, and in regard to certain proposed by-laws. We intend our proxy to have complete discretion in voting on any of these matters, as well as any other matter of any sort which may come up at any meeting, regular or special, until and unless this proxy shall be revoked, the right to revoke at any time as to any one of us being hereby reserved."

The ballot cast by defendant read as follows:

"*Primary ballot.* In accordance with the by-laws of the Kansas Wheat Growers Association, I hereby cast my vote for S. T. Cross as director of said

association, at the primary meeting of district No. 5, to be held at Lewis on the 5th day of May, 1925, at 2:30 o'clock.　　　(Signed)　HARRY MASSEY."

If defendant considered he was fraudulently induced to become a member, he was privileged to renounce membership, and renunciation would relieve him from obligation to comply with the marketing agreement. It rested entirely with him what he would do. He could rescind and stay out, or he could stay in. But he could not consider himself out at marketing time, and in when corporate business was to be transacted, or keep membership and withdraw from the marketing agreement. No subtlety or sophistry can reconcile these inconsistencies, and if, as defendant asserted, he was a member of the association in 1924 and 1925, he is liable for nondelivery of his wheat crops of 1922, 1923 and 1924.

Defendant says waiver is chiefly a matter of intention, and the district court did not find defendant intended to waive the fraud when he exercised privileges of membership. The district court did not find defendant withheld delivery of his wheat because he was induced to become a member of the association through fraud. So far as the findings disclose, he may not have regarded the deception as important. In this instance, however, the operative facts control. Defendant took his own course. He claimed to be a member, and acted as a member, and the law forbids him to be a member for some purposes and not for others.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff.