PEOPLE ex rel. SOUTHERN COTTON–OIL CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 5, 1898.)

TAXATION—CORPORATIONS ENGAGED IN BUSINESS WITHIN STATE.

A foreign corporation having its chief place of business in a foreign state, with no office or place of business in the state, constituted a certain firm, having a regular place of business in the state, its selling agents. These agents forwarded orders to said corporation, which, if approved, were filled at the company's factories. The agents received a commission. Consignments were also made at frequent intervals to said agents. who filled some local orders. *Held*, that the corporation was not doing business in the state, within Laws 1880, c. 542, and amendments. providing for taxing corporations "doing business in this state," and the fact that the corporation kept a bank deposit in the state, and paid its agents by checks thereon, did not change the situation.

Certiorari by the people, at the relation of the Southern Cotton-Oil Company, against James A. Roberts, comptroller, to review the determination of the defendant in assessing upon the relator a business or franchise tax. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

W. W. MacFarland, for relator.
T. B. Hancock and G. D. B. Hasbrouck, for defendant.

MERWIN, J. The relator is a foreign corporation organized under the laws of the state of New Jersey, and has its principal place of business at Philadelphia, in the state of Pennsylvania. The tax in question was for the year ending November 1, 1893. During that year the relator was engaged in the manufacture of cotton-seed oil and other products of cotton seed, all its factories being situated outside of the state of New York. Prior to September, 1892, the relator had an office in this state, but it was then discontinued, and an arrangement made by it with Whitman Bros., a firm of commission merchants and general merchandise brokers, who had a place of business in New York City. By this arrangement, Whitman Bros. had

the selling agency of the relator in New York and the Eastern markets for crude and refined oil, and also for the sale of oil for foreign markets; and for compensation had a commission of a certain percent. on the. amount of sales. Under this arrangement, Whitman Bros. obtained orders for goods, and sent them to the relator for approval. If approved, they were filled, in the majority of cases, by shipment direct from the manufacturing establishment to the place of consumption. The relator also consigned to Whitman Bros. some of its goods for sale if a named price could be obtained. These consignments averaged 400 or 500 barrels of oil a month, of the value of from $17 to $20 a barrel. Some of the sales of these consigned goods were for consumption in New York state. All were made in the original packages. It may be inferred that some of the orders that were sent to the home office for approval were, if approved, and a speedy delivery desired, filled from the goods consigned. The title of the consigned goods remained in the relator until delivered to the buyer. The relator had a bank account in New York, made up of deposits of proceeds of sales by Whitman Bros., or from money borrowed at the bank. The drafts on this bank account were from the Philadelphia office, and the money was all used by the relator in its business outside of the state, except that Whitman Bros. were paid their charges by check out of the proceeds of sales, such check being drawn by the home office. The average amount of deposits between January 9, 1893, and January 8, 1894, was about $38,900. The business through Whitman Bros. was chiefly exports. The relator had no office or place of business in this state. The sales were for cash. The capital of the relator is $4,000,000.

The claim of the relator is that it is not doing business in this state, within the meaning of the statute. The solution of this question depends upon the construction to be given to the dealings between the relator and Whitman Bros. It is quite clear that the obtaining by Whitman Bros. of orders for goods, sending such orders to the relator for approval, and the filling of the approved orders by transmission of goods direct from the relator's factories, is not, within the adjudications on that subject, doing business within this state, within the purview of the statute. People ex rel. Washington Mills Co. v. Roberts, 8 App. Div. 201, 40 N. Y. Supp. 417, affirmed 151 N. Y. 619, 45 N. E. 1134; Lumber Co. v. Holbert, 5 App. Div. 559, 39 N. Y. Supp. 432; People ex rel. Lembeck & Betz Eagle Brewing Co. v. Roberts, 22 App. Div. 282, 47 N. Y. Supp. 949, and cases cited. There is, however, in this case, something further to be considered. The relator consigns a portion of its goods to its agent, the commission merchant, for sale. Sales are here made from such goods either directly at a price as directed by the relator, or in fulfillment of orders approved by the relator. The proceeds are deposited to the credit of the relator in a bank here. Do these additional facts authorize the conclusion that the relator is doing business within the state? The goods consigned to the commission merchants were in their possession and control, and their disposition in accordance with the directions of the relator was a part of their business, not the business of the relator. A commission merchant

has ordinarily a right to sell in his own name. Story, Ag. §§ 33, 34.
As to the public, he is the dealer. It should not, I think, be held
that the consignment of goods by a nonresident manufacturer to a
resident commission merchant for cash sale constitutes a doing of
business by the manufacturer within this state, within the meaning
of the statute. Mineral Co. v. Clute, 7 Misc. Rep. 124, 27 N. Y. Supp.
343. The method adopted here for the transmission of the proceeds
does not materially change the situation; nor does the fact that the
charges of the commission merchants or agents were paid by check
after the deposit, instead of being deducted before the deposit. In
this view of the character and effect of the dealings between the re-
lator and Whitman Bros., coupled with the fact that the relator has
here no office or place of business, the conclusion is reached that
the relator was not subject to the tax in question.

Determination of comptroller reversed, with costs. All concur.