## A. HAARPARINNE

*vs.*

## BUTTER HILL FRUIT GROWERS ASSOCIATION.

Androscoggin.     Opinion December 27, 1922.

*A corporation, organized for a common purpose to assist the people of a community as a cooperative and mutual agency to market their farm produce, acts in the capacity of agent only, no authority appearing in its charter or articles of association to authorize it to act as purchaser.*

The corporation was manifestly an association for the common purpose of enabling the people of the community to form a cooperative and mutual agency for the handling of their apples and other farm products.

The plaintiff became a member of the corporation in accordance with the provisions of Section 3, and thereby subject to all the obligations, and entitled to all the privileges and advantages, of such membership.

There is no provision in the charter or articles of association that warrants or implies the conclusion that the association was acting, or was authorized to act, in the capacity of purchaser from its individual members.

There is no adequate evidence, if authorized, that the corporation in this case assumed to purchase the plaintiff's apples for the association.

On motion for a new trial by defendant.   An action of assumpsit to recover for 150 barrels of apples at $5.50 per barrel.   Plea, the general issue.   The question involved was as to whether the defendant was acting, in the handling and packing of the apples of plaintiff, as agent of plaintiff, or purchaser.   The case was tried to a jury and a verdict for $786.50 was rendered for plaintiff, and defendant filed a general motion for a new trial.   Motion sustained.

The case is fully stated in the opinion.

*Frank A. Morey,* for plaintiff.

*Benjamin L. Berman and Jacob H. Berman,* for defendant.

SITTING:   CORNISH, C. J., SPEAR, DUNN, WILSON, DEASY, JJ.

SPEAR, J.   The action in 'this case is assumpsit for the price of 150 barrels of apples at $5.50 per barrel, with a money count.   The

plea was the general issue.   The relation of the plaintiff and defendant does not grow out of an alleged agreement of sale, acceptance and delivery, but arises from the voluntary membership of the plaintiff, as a stockholder, in the defendant corporation, as appears from the following certificate of stock and the certificate of incorporation of the Association:

"This certifies that A. Haarparinne is the owner of one share of the Capital Stock of the Butter Hill Fruit Growers Association."

The certificate of incorporation, so far as pertinent, omitting the names of members, is as follows:   "Section 1, Name.   This association shall be known as the Butter Hill Fruit Growers Association incorporated under the laws of the State of Maine.   Its place of business shall be in Livermore, Maine.   Section 2, Objects.   The objects of this Association shall be to encourage better and more economical methods of production; to secure better results in grading, packing, marketing and advertising our products, to buy supplies in a cooperative way; to rent, buy, build, own, sell and control such buildings and other real and personal property as may be needed in the business; to cultivate the cooperative spirit in the community, and perform any other work which may tend to the betterment of the members and the uplift of the neighborhood.   Section 3.   Membership.   Any bona fide fruit grower in Livermore, tributary to the shipping point of this Association, who shall sign these rules, may become a member of this Association by contributing his share or shares of capital stock or other regular investment."

It would hardly seem necessary to go further in the discussion of this case than the foregoing recital of its objects.   It is so manifestly a corporation for the common purpose of enabling the people of a community to form a cooperative and mutual agency for handling and marketing their apples and other products, that interpretation can add but little to what is so clearly expressed.

We are of the opinion, moreover, that every section and item of the certificate of incorporation is expressed, in substance and form, in phraseology calculated to carry on the entire business of the corporation in harmony with the scheme expressed in the objects and purposes of the organization.

It is obvious that the plaintiff became a member in accordance with the provisions of Section 3 and thereby subject to all the obligations and entitled to all the privileges and advantages of such membership.

Referring to other pertinent sections and paragraphs, we come first to Section 8, which provides for grading and inspecting, and specifies what is required of members to enable the Association to accomplish these purposes. Item 1 reads as follows:

"All goods produced for sale by the members shall be delivered to the Association for grading, packing, and shipment." It will be observed that this item requires delivery to the Association for particular specified purposes in no way suggesting the sale. Section 9 describes the duties and rights of members. Items 1, 2 and 3 read as follows:

Item 1, "A member shall have the right to give away, or retain for his own use such of his fruit as he may wish, but he shall not make sale of any fruit or other products promised to the Association, to any outside parties, except any product not accepted by the Association."

Item 2, "In case any member is offered a price in excess of the price then obtainable by the Association, said member shall turn said bid over to the Association for filling from said member's goods."

Item 3, "All members shall contract their entire crop of fruit to the Board of Directors each year, whenever in the judgment of the Board such contracts would prove of benefit to the Association."

These items, read together, clearly define, and were undoubtedly conceived to establish, a voluntary agreement whereby the members of the Association should individually make delivery of their apples for marketing with a view to the corporate as well as individual benefit.

The plaintiff, however, puts great stress upon the effect of Item 1, inasmuch as, as he contends, he could not sell his fruit to any "Outside parties." But this was an arrangement to which he consented, and was an essential and necessary part of the scheme of accomplishing the chief purpose for the Association. Without that provision, the business of the enterprise would have been as uncertain and vacillating as the moods and whims of its members. A reference will show that Item 2 was intended to supplement Item 1 as to price, by giving every member the advantage of an offer of a larger price than the Association was getting. By Item 2 it will be seen the member simply transfers the "bid over," for filling his order, not for buying his goods. Moreover, the plaintiff treats Item 1 of Section 9 as if it compelled him and of course every other member as a matter of

contract to deliver his apples to the Association, and as a legal restraint upon him from selling them, himself, to "outside parties." But such is not the interpretation. A member under Item 1 is under no legal obligation, not to sell his apples to an "outside party." He is in honor bound, however, not to do it. Yet if he does, no penalty whatever attaches except that of conscious wrong and the loss of his rights as a member of the Association. It is clearly apparent, however, that if the plaintiff could sell to "outside parties" every member could do the same, and that would mean the end of the Association as an effective agency. Hence, the whole scheme of the Corporation depends upon not a legal but an honorable observance of that item. We are unable to discern any interpretation of Section 9, that points to the Association as a purchaser, or a member thereof as a vender thereto.

Section 10 prescribed the duties and powers of the manager, which so far as pertinent to the present discussion, read as follows:

"He shall have charge of the grading, packing and inspection of all the Association products and shall have control of the brands and labels, and their use on the Association packages, in accordance with the rules of the Association. He shall enter into contract for the sale of the Association goods. He shall have entire charge of the marketing of all Association goods, subject only to the action of the Board of Directors, and the rules and regulations of the Association."

Among other things the specification of his duties requires that: "He shall enter into contracts for the sale of the Association goods. He shall have entire charge of the marketing of all of the Association goods." What were the Association goods? Undoubtedly in the present case the apples that each member of the Association should turn over to the Association for grading, inspection and sale, in accordance with the common purpose of the Corporation. Nothing in this section points to a purchase and a sale by a member.

Section 13 relates to packing and emphatically points to individual ownership. It provides: "The cost of packing each individual's fruit shall be deducted from the receipts of the sale of that fruit." This method of doing business is entirely incompatible with the theory of the sale by the member to the Association. Moreover, the manner of transacting the business of the Association in disposing of fruit from the individual to the market, as shown by actual transactions with the plaintiff, were in exact accord with the requirement of

the foregoing provision. A part of the very lot of apples, for which he brings suit, was sold by the manager, all the expenses deducted and the balance turned over to him. No semblance of a sale to the Association appeared in this transaction.

As before said, the plaintiff was a voluntary member of the defendant Association, and as such, at the time of the transaction here involved, was subject to the rules and regulations thereof. We are, accordingly, unable to find any provision in the charter or articles of association that warrants or implies the conclusion that the Association was acting or authorized to act in the capacity of purchaser from its individual members. Every section and item of the Charter is inconsistent with such an interpretation.

Nor is there any adequate evidence that the corporation, if authorized, assumed in this case the purchase of the plaintiff's apples for the Association. The evidence clearly shows that the manager in dealing with the apples of the plaintiff, acted in harmony with his duties as prescribed in the charter. He had supervised the packing of the plaintiff's apples as required. A part was marketed and a part left. Cold weather was coming on. The apples were in the plaintiff's barn. The manager told the plaintiff to cover up the apples with hay; the plaintiff did so and later put them into his cellar. When he took them to Canton for shipment it was discovered that the apples were frozen. Up to this time not a thing had been done or said with reference to the selling or purchase of these apples, different from what was said and done with reference to the other part of the same lot that the manager had already marketed, except the suggestion that he cover them with hay. Later an agent of the Association by direction of the Treasurer, came to the house of the plaintiff, and salvaged some 60 barrels from the frozen lot. But this act on the part of the Association was in perfect accord with the object for which it was formed, namely, mutual benefit and assistance to associate members.

But the act of the treasurer was not the ground at all upon which the plaintiff claims the Association became the purchaser of all his apples. He claims that all the apples he delivered to the Association that were sold and settled for with him, according to the rules and regulations as above stated, as well as those that were left and frozen, were sold to the Association when they were packed, as appears from his own testimony as follows:

"Q. Now do you remember whether they packed 185 barrels? A. Yes, sir. Q. So that there were 185 barrels in your stable when Mr. Boothby and his packers went away? A. I had 195 barrels in there, because I packed 10 barrels of early apples myself. Q. But the Association only packed 185 barrels? A. Yes, sir. Q. Now those 185 barrels were the same barrels of which 145 became froze, were they not? A. Yes, sir. Q. Now when Mr. Boothby and his men left those apples in your stable, they were not sold then, were they? A. Yes, sir; because they were packed. Q. Because they were packed? A. Yes, sir. Q. And is that the only reason why you say that those apples were sold, were because they were packed? A. The way to answer it is that nobody can pack apples for another person unless he buys them. Q. I didn't understand what you said? A. Nobody can pack the apples of another person unless he buys them. Q. So that is the reason why you think that those apples were sold? A. Yes, sir; of course."

The plaintiff, in his brief bases the sale upon precisely the same ground that he does in his testimony. He says: "The title passed to the defendant when it sorted, packed and stamped the apples and told the defendant to leave them in the barn." The plaintiff in his brief further says: "It was through the carelessness of the defendant who owned the apples that they became frozen." Whether it was the defendant's carelessness or not it cannot affect the question of whether there was a sale.

It seems to us that the object of the Association as expressed in the charter; the intention to attain that object as made manifest in all the administrative provisions; and the transaction of its business in accordance with these provisions; all point in the same direction and prove conclusively that every member of the defendant association designed to and did adopt the Association as a selling agent of what farm products it was his duty to contribute under the rules and regulations of the Association, and that there is nothing in the evidence to take the present case from the operation of its charter rights and obligations.

It would seem upon the whole that the conception of the Association was to establish a Corporation, made up of a few directors charged with the duty of selecting a competent manager to do the executive and administrative work of preparing and marketing the apples of each associate, thereby bringing to the discharge of his

office, the time, the attention, the knowledge of the business and the trend of the market, which it would be practically impossible for the individual to do, in view of the many other activities on the farm, and his lack of facilities to know the conditions of business and keep his hand on the pulse of the market. An important result of the Association, whether so contemplated or not, was to actually relieve the farmer of the very things which the manager is selected to do, and at the same time to enable his affairs to receive all the advantages of intelligent personal attention.

As the case comes up on a motion for a new trial by the defendant the entry must be,

*Motion sustained.*