No. 26,606.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellee,* v. THE BOARD
OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK and
E. C. GROVE, as Sheriff, *Appellants.*

SYLLABUS BY THE COURT.

TAXATION—*Nonprofit Coöperative Associations—Liability for Taxes.* A non-
profit coöperative association, having no capital stock, organized under the
statute to market for their benefit the wheat grown by its members, is not
a merchant within the term as defined in the taxation statute, and is not re-
quired to pay taxes on account of holding such wheat either on the basis of
the average amount held during the year or otherwise, the growers of the
wheat as its beneficial owners being liable for whatever taxes its ownership
involves.

Appeal from Sedgwick district court, division No. 4; A. MILLS EBRIGHT,
judge. Opinion filed December 5, 1925. Affirmed.

*M. J. Healy,* of Topeka, and *Clyde M. Hudson,* of Wichita, for the ap-
pellants.

*T. A. Noftzger, Geo. W. Cox, W. J. Masemore* and *R. L. NeSmith,* all of
Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: In 1923 the state tax commission (now merged with
other bodies into the public service commission) ruled that the
Kansas Wheat Growers Association is to be classed as a merchant
for purposes of taxation, and as such required to pay taxes upon the
average amount of wheat in its possession during the year. The
association brought this action against the local taxing officers to
enjoin the collection of a tax levied under that rule with respect to
wheat held by it. The injunction was granted and the defendants
appeal.

The plaintiff is incorporated without capital stock under the stat-
ute, the purpose of which is therein described to be "to promote,
foster, and encourage the intelligent and orderly marketing of ag-
ricultural products through coöperation and to eliminate speculation
and waste; and to make the distribution of agricultural products as
direct as can be efficiently done between producer and consumer;
and to stabilize the marketing problem of agricultural products."
(R. S. 17-1601.) Such associations by the terms of the statute are

Taxation, 37 Cyc. p. 796.

"deemed nonprofit, inasmuch as they are not organized to make profit for themselves, as such, or for their members as such, but only for their members as producers." (R. S. 17-1602.) The association is authorized to make marketing contracts requiring its members to sell any specified part of their agricultural products exclusively to or through it, under a contract which "may provide that the association may sell or resell the products of its members, with or without taking title thereto," paying the net returns to the members. (R. S. 17-1616.) The character of contracts made by the plaintiff with its members are set out in the opinions in several cases in which their validity has been upheld. (*Wheat Growers Association v. Schulte,* 113 Kan. 672, 216 Pac. 311; *Wheat Growers Association v. Floyd,* 116 Kan. 522, 227 Pac. 336; *Wheat Growers Ass'n v. Ast,* 118 Kan. 247, 234 Pac. 963; *Wheat Growers Ass'n v. Loehr,* 118 Kan. 248, 234 Pac. 962.) Each member, in pursuance of a valid obligation he has assumed as such, turns over to the association the wheat he has grown, receiving a part of its value in cash, and a certificate showing the transaction. Ultimately he is paid the full amount realized on his wheat on its sale by the association, less expenses and a small amount reserved for future contingencies. A pool is formed of the crop of each year and sales are made according to the judgment of the managers of the association, the net proceeds going to the growers of the wheat in proportion to their contributions.

The defendants' position is that the association acquires the title to the wheat; that it buys and sells it, and is a merchant within the meaning of the term as used in the taxation statute. The association contends that it does not acquire the title, that in any event it is not a merchant, because it does not buy or sell for any profit to itself. The tax statute thus defines the word merchant as there used: "Every person, company or corporation who shall own or hold, subject to his control, any personal property within this state, which shall have been purchased with a view of being sold at an advanced price or profit, or which shall have been consigned to him for the purpose of being so sold." (R. S. 79-1001.)

A transaction somewhat similar to that here involved has been held not to amount to a sale to the association (*Haarparinne v. Fruit Growers Ass'n,* 122 Me. 138), and in another case of the same general nature, a contrary conclusion was reached, but there the agree-

ment between the member and the association contained the clause "the parties agree that this is a contract for the purchase and sale of personal property." (*Texas Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 288.)

The relation of the association and its members looked at broadly, seeking the real intention of the parties to the arrangement as gathered from the contracts as a whole, considered in connection with the statute, is not that of buyer and seller. The association has indeed a legal entity of its own; it is a corporation, but not a corporation for gain; it may make and enforce contracts with its own members and with others; it may buy and sell, sue and be sued. But it seeks no profit for itself. It is a mere instrument through which the members undertake by concerted action to market their own crops. The members do not bargain with it over prices. The bond of membership binds each to the others to sell only through it, for in no other way can coöperation be enforced. The members are the association in a fuller sense than the stockholders of a corporation having capital stock are the company. The rights acquired by the association with respect to the wheat are held for the benefit of its members. They are the real owners, while it has possession, control, and the power of sale, exclusive and irrevocable. Moreover the association is not a merchant within the language of the statutory definition, for the merchant there described must have possession of personal property either purchased by it for sale at an advanced price or profit, or consigned to it to be sold in that manner—that is, at an advanced price or profit. Here no advanced price can be in contemplation, for no price is made as between the member and the association—he gets all it receives, less present and future expenses. and if the sale by the association can be said to be made at a profit at all, the profit is that of the member, while the profit referred to in the statute must clearly be that of the merchant.

To the section of the statute fixing the situs of the property of merchants and manufacturers for purposes of taxation at their place of business (Laws 1917, ch. 320, § 3), the following addition was made in 1921:

"The business of an elevator, whether individually or separately owned, or by a parent company owning several elevators located at different points, shall be considered as a merchandising business and all grain or other commodities purchased or handled by the owner or management of an elevator shall have their tax situs in the taxing district where the elevator is located through

which the business is transacted: *Provided,* That the taxing situs of grain, owned by a resident of this state, held in storage by warehouse, on which warehouse receipt has been issued, shall be taxed at the place of residence of the owner of such receipt." (R. S. 79-1006.)

The association stored the wheat here involved under a contract made by it with the owner of an elevator. But if it had kept the wheat in an elevator of its own, that fact would not have made it a merchant under the statutory definition. The kind of elevator the business of which is characterized by the statute just quoted as merchandising is obviously an ordinary commercial one where grain is stored for compensation, and not one such as the coöperative association might own or rent for storing that of its members.

The conclusion follows that the injunction was rightly granted against the collection of taxes based upon the average amount of wheat held by the association throughout the year. The growers of the wheat, however, being its beneficial owners during the time it was held for sale by the association, are respectively liable with regard to the share thereof owned by them on the first day of March of any year.

The judgment is affirmed.