REPUBLIC STEEL CORPORATION, RESPONDENT, v. ATLAS HOUSEWRECK-ING & LUMBER CORPORATION, APPELLANT.—113 S. W. (2d) 155.

Kansas City Court of Appeals. January 10, 1938.

*Newbill & Brannock* for respondent.

*William J. Gilwee* for appellant.

BLAND, J.—This is a suit on an account. At the close of all of the evidence an instructed verdict was returned in favor of the plaintiff. Defendant has appealed.

There was no dispute at the trial as to the correct balance due upon the account, the defense being merely that plaintiff was not entitled to maintain this action for the reason that the business it did, out of which the account grew, was transacted in the State of Missouri when the plaintiff, a foreign corporation, was not qualified to do business in this State because it had not complied with sections 4596 to 4599, inclusive, Revised Statutes 1929.

The facts show that plaintiff, a manufacturer of steel pipe, is a corporation organized under the laws of the State of Ohio; that the defendant is a corporation organized under the laws of the State of Missouri dealing in such articles; that on June 26, 1933, the parties, in Kansas City, Missouri, entered into a contract wherein defendant was referred to as the distributor of plaintiff's products in Kansas City, Missouri, and vicinity. This contract provided that plaintiff would supply, on conditions mentioned in the contract, defendant's requirements for Black and Galvanized, Standard Weight, Extra Heavy and Double Heavy Steel pipe. The pipe, under the terms of the contract, was to be shipped by plaintiff from its factory in Youngstown, Ohio. The materials ordered by defendant for its stock in Kansas City were to be consigned to it at that point. The pipe sold by defendant to its customers, not in stock, was to be shipped by plaintiff directly to such customers.

The contract further provided that defendant was to receive plaintiff's products f. o. b. Kansas City, Missouri. Plaintiff was to maintain control over the minimum price at which the pipe could be sold to the public. Defendant was required to use certain methods prescribed by plaintiff in the computation of its invoice sale prices. Defendant was to handle no other products such as covered by the contract except that of plaintiff. Defendant was required to keep a true and correct record of the materials belonging to plaintiff accessible to plaintiff's representative and to permit plaintiff to make an inventory of the stock in the possession of the defendant at all reasonable times. All sales made by defendant wherein shipment was made direct to its customers were subject to the approval of the plaintiff. The powers of the defendant in the sale of the materials under the contract were otherwise limited by its terms. -

The contract further provided that all materials in the possession of the defendant should remain the property of the plaintiff until sold to the customers of the defendant and that title to the proceeds of such sales was to vest in and belong to the plaintiff until accounted for by the defendant. All orders, invoices, debits, credit memoranda

and ledger sheets, which supported plaintiff's account, relative to the contract, cleared through the St. Louis office of the plaintiff. It appears that the ledger sheets were made up in the office of the plaintiff in Youngstown, Ohio. Where the other evidences of the account were made is not shown.

Defendant was required to render a monthly statement of all sales to plaintiff, whereupon, plaintiff rendered defendant invoices for the material sold. Plaintiff controlled the price at which the pipe was sold. Defendant agreed to accept the pipe shipped to it at Kansas City, Missouri, store it and to take care of it and pay all expenses incidental thereto. Defendant agreed to be responsible to plaintiff on account of any damaged pipe or by reason of its theft. Defendant agreed to conduct the business of selling the pipe in each instance in its own name and guaranteed payment to plaintiff on all sales made by defendant. It was provided in the contract that all pipe consigned to defendant should remain the property of the plaintiff until sold and that title to the proceeds of the sale should vest in and belong to the plaintiff until accounted for by defendant. The contract also provided for its termination under certain conditions. The contract was subsequently amended, changing certain of its provisions relative to discounts to be received by defendant and the method of payment to be made by it.

The contract remained in force until May 26, 1934, when it was cancelled by plaintiff.

Under this contract a large amount of pipe was shipped by plaintiff from Youngstown, Ohio, to defendant in Kansas City. Plaintiff had stationed in Kansas City a sales agent and also one in St. Louis. It also maintained in St. Louis a district sales office. When defendant ordered pipe it would do so either through plaintiff's agent in Kansas City or its sales agent in St. Louis or its office there. These orders were forwarded to plaintiff's mill in Youngstown, Ohio for filling. There is no doubt that much of the business having to do with the ordering and accounting, under the contract, was done through the St. Louis office. Plaintiff's cancellation of the contract was done through that office, the letter being signed by the district sales manager located there. The contract was cancelled, however, not at the orders of the sales manager in St. Louis but was directed to be cancelled from the office of plaintiff in Youngstown, Ohio. After the cancellation of the contract all material on hand belonging to plaintiff in the possession of defendant was removed by plaintiff and sold by it. This was in accordance with the provisions of the contract allowing such a procedure. This suit was then brought for the balance owing plaintiff by defendant.

There is no evidence that plaintiff maintained any warehouse or stock of pipe in the State of Missouri. All shipments of pipe to defendant or its customers were made directly from Youngstown, Ohio,

and under the provisions of the written contract. Plaintiff took no part whatever in sales made by defendant.

Under these facts defendant insists that plaintiff conducted business in the State of Missouri in violation of the statute. In this connection defendant says that the facts disclose "that the foreign corporation (respondent herein) was bringing its property in to this State; that title to the property and proceeds to sales remained vested in the foreign corporation; that the minimum sale price was controlled by the foreign corporation; that there was continued dealing by the foreign corporation with the property after interstate commerce had wholly ceased its dealings therewith."

These various things alluded to by defendant are not determinative of the question presented, unless it is true that plaintiff continued dealing with the pipe after its shipment in interstate commerce had ceased. Of course, it is admitted that if plaintiff's business was confined to interstate commerce, then it is not subject to our statute requiring a license by a foreign corporation in order to qualify it to do business in this State. On this point see Yarbrough v. W. A. Gage & Co., 70 S. W. (2d) 1055.

It is now well settled, not only by the Federal Courts but the Supreme Court of our State, that all interstate commerce is not sales of goods; that importation from one State to another is the indispensible element or test of interstate commerce and all dealing relative to the goods which contemplates and causes such importation is a transaction in interstate commerce. [Furst v. Brewster, 282 U. S. 493; Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 Fed. 1; Yarbrough v. W. A. Gage & Co., *supra*.]

In the case at bar the pipe was shipped to the defendant upon consignment, title remaining in plaintiff and, under the contract, plaintiff had considerable control over the method of the sale of the goods. However, they were sold to defendant's customers, exclusively, plaintiff not attempting to interfere with the matter as to whom the pipe should be sold. Defendant was to be responsible for the payment of the goods sold to its customers and also for the preservation of the pipe, itself, that was shipped to it direct. Under the contract between the parties the relationship between them was that of principal and factor and such relationship without more does not make the factor such an agent of the principal that it can be said that he is conducting the business of the principal in the State where the sales takes place (Butler v. Rubber Co., *supra;* Yarbrough v. W. A. Gage & Co., *supra;* International Text Book Co. v. Pigg, 217 U. S. 91; International Text Book Co. v. Gillespie, 229 Mo. 397), unless, of course, there is such interference with the business of the factor by the principal as to show that the business he is carrying on is, in fact, that of the principal. In this case defendant insists that there was such interference and, in this connection, points out that plaintiff maintained

a district sales office in the city of St. Louis, also, a local representative in Kansas City, as well as a sales agent in St. Louis; that all orders, invoices, ledger sheets, debits and credit memoranda cleared through the St. Louis office; that it was through the St. Louis office that the contract was cancelled; that orders for the pipe were taken through the St. Louis office. It was also shown that information was furnished by the plaintiff to the defendant from the St. Louis office concerning the prices of the material and general information having to do with the business being carried on between the parties.

We do not think that these matters affect the character of business being transacted as it related to interstate commerce. In International Text Book Co. v. Gillespie, *supra,* a corporation of Pennsylvania was engaged in conducting a correspondence school, selling written instructions to students in Missouri, supplying them, by mail, with text books, papers, questions and answers. The Pennsylvania corporation maintained a number of solicitors in this State, who procured contracts from citizens in this State for instruction. While instruction papers were sent from Pennsylvania through the mails to the students in this State, the money paid by the students was received, in most cases, in the first instance, by the solicitors or representatives of the defendant in the district in which the student resided. Offices were maintained in this State for the purpose of furnishing and conducting the sale of scholarships. The defendant maintained in this State a district superintendent, nine assistant superintendents, and three solicitors in each division and one district office and nine division offices in which were clerks and stenographers. In these offices the plaintiff kept for display advertising matter, text books, instruction papers, etc. The district superintendent of the district, in which the business involved in that case was carried on, made agreements for the employment of division superintendents and solicitors, a written contract of employment being signed in this State by the employee and by the plaintiff in the State of Pennsylvania.

It was held in that case that these circumstances did not affect the interstate character of the business plaintiff was doing with citizens of this State. We are of the opinion that, in the case at bar, the business carried on by plaintiff with this defendant, through its St. Louis office and its sales agent in Kansas City, did not change the character of business being conducted by the parties. It was merely in furtherance of the business being carried on which was interstate in character.

It is true that after the contract was terminated and the relationship between the parties had ceased, plaintiff, through its agent in this State, removed certain pipe and sold it. However, it is held that one isolated piece of business does not constitute intrastate business.

[International Text Book Co. v. Pigg, *supra.*] Aside from this, the sale of the pipe was made after the termination of the contract. In Gutta Percha Mfg. Co. v. Lebreck, 214 S. W. 285, it was said that the particular transaction involved was interstate and the plaintiff "should not be denied the right to enforce the contract with reference to such particular interstate transaction, even though it may be doing business as to other matters within the State without a license."

We have examined the cases cited by defendant and we do not deem St. Louis Southwestern Ry. v. Alexander, 227 U. S. 218, or State ex rel. v. Robertson, 196 S. W. 1132, in point. While, the facts in Wilson v. Pierce, 123 Mo. App. 521, and Farrand Co. v. Walker, 169 Mo. App. 602, might distinguish those cases from the case at bar, we will not attempt to make such distinguishment, for the reason that the theory upon which those cases was decided is not in harmony with the later decisions that we have cited *supra.*

We are of the opinion that plaintiff was not required to procure a license to do business in this State in order to engage in the particular business involved in this case.

However, defendant contends that the court erred in directing a verdict for the plaintiff for the reason that plaintiff sought to prove its case by oral testimony and the answer, having consisted of a general denial, as well as allegations based upon the theory that plaintiff was doing business in Missouri in violation of the statute in question, that the court should not have directed a verdict for plaintiff, as it was the privilege of the jury to believe or disbelieve the testimony as to the correctness of the account upon which plaintiff made out a case.

However, an examination of the record shows that the alleged defense that plaintiff was not licensed to do business in this State was the only one urged at the trial. The court inquired of counsel for the defendant whether the only defense he had was that plaintiff had failed to procure such a license, and counsel for the defendant replied that that was his sole contention. There was some other colloquy between the court and counsel following this, which does not show that counsel retracted his stâtement with reference to the defense which was being made. Under such circumstances a directed verdict was proper. [Davidson v. St. Louis Transit Co., 211 Mo. 320, 355 to 360.] The judgment is affirmed. All concur.