No. 14,711.

INDUSTRIAL COMMISSION *v.* UNITED FRUIT GROWERS ASSOCIATION.

(103 P. [2d] 15)

Decided May 20, 1940.

224

Mr. Byron G. Rogers, Attorney General, Mr. Elmer P. Cogburn, Assistant, for plaintiff in error.

Mr. Wayne N. Aspinall, Mr. Thomas K. Younge, for defendant in error.

Mr. L. H. Larwill, Mr. D. K. Wolfe, Jr., Mr. Ernest C. Burck, amici curiae.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

The sole question here presented for determination is whether defendant in error, a cooperative marketing association organized under the cooperative marketing law (S.L. 1923, p. 420, et seq., appearing as sections 14 to 45 inclusive, chapter 106, '35 C.S.A.), is required to pay contributions on the wages of individuals employed by it, under the provisions of the Unemployment Compensation Act, chapter 167A, 1939 Supplement, '35 C.S.A. In an action by the Industrial Commission seeking the recovery of such contributions, the district court upheld the contention of the association that under the definitions promulgated by the commission's regulation No. 6, the labor involved in the activities of the association was "agricultural labor" and exempt from the operation

of the Unemployment Compensation Act by section 19, paragraph (g) (6) A thereof. The commission here seeks a review of this adjudication.

The association is a nonstock, nonprofit, cooperative organization of agriculturists actively engaged in the business of growing fruit on farms and in orchards for the purpose of sale, and the operations of the association consist solely in marketing the fruit crops of its members, the remission of the proceeds therefrom after the payment of the expenses thereof on a prorata basis, and purchasing and distributing supplies to members for their use in growing and marketing their crops.

■ When performed by a farmers' cooperative association the services here involved now are expressly exempted from the operation of the Federal Social Security Act. Internal Rev. Code, §1607 (l) (4).

■■ Section 19, paragraph (g) (6) A of the Colorado act, supra, without further exposition simply excepts "agricultural labor" from the purview of the act. Pursuant to section 11 (a) and (b) of the act, the commission in 1938 promulgated regulation No. 6 defining agricultural labor. So far as here pertinent this regulation provides: "The term 'Agricultural Labor' includes all services performed— * * * (B) By an employee in connection with the processing of articles from materials which were produced on a farm; also the packing, packaging, transportation, or marketing of those materials or articles. Such services do not constitute 'agricultural labor,' however, unless they are performed by an employee of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation, or marketing is carried on as an incident to ordinary farming operations as distinguished from manufacturing or commercial operations, or unless the products grown were produced under ordinary field operations as distinguished from products specially cultivated under artificial structures or diggings. As used

herein the term 'farm' embraces the farm in the ordinarily accepted sense, and includes * * * fruit * * * farms, * * * and orchards."

The commission complains that in determining that the questioned labor was agricultural, the trial court considered the three clauses of the second sentence of paragraph B of the regulation as though they were stated in the disjunctive and thus eliminated the provision that the labor must be performed "by an employee of the owner * * * of the farm * * *," which it argues is a conjunctive prerequisite of the definition. We do not understand this was quite the formula the trial court adopted, and surmise that in its concern over questions relating to the construction of the regulation the commission has overlooked the fundamentals controlling the controversy. It is certain that the products involved herein are purely agricultural in character and were produced under ordinary field operations on fruit farms and orchards. Thus the decisions in *Great Western Mushroom Co. v. Industrial Commission,* 103 Colo. 39, 82 P. (2d) 751, and *Park Floral Co. v. Industrial Commission,* 104 Colo. 350, 91 P. (2d) 492, wherein the products involved were "specially cultivated under artificial structures or diggings" and not "produced under ordinary field operations," are in no manner applicable in the case at bar. It also is self-evident, as the regulation expressly recognizes, that the marketing of the crop is an essential of, and an incident to, orthodox farm operations. Also it is conceded that if an individual farmer member of the association marketed the fruit produced from his orchard, the labor attendant to such marketing operation would enjoy an exempt status under both regulation 6 and statute. The commission contends however, that a transition from an exempt to a nonexempt position occurs when the association takes over the marketing function, and the labor incident thereto is performed by *its* employees, and not the *farmers.* We cannot agree with this contention. If the

labor employed by one individual grower in marketing his crop is within the exception of the statute, as unquestionably is the case, it would seem that if two or more farmers pool their crops and cooperate in marketing them, their situation would not be different from that of the individual grower. It is a matter of common knowledge that all fruit growers do not belong to cooperative associations and that such producers individually, with labor employed by them, attend to their own marketing operations. Thus we can perceive no reason for holding that because a number of fruit farmers cause a cooperative association to be organized for the purpose of facilitating the marketing of their farm products, they should be subject to the terms of a regulatory statute which concededly would not apply to the labor employed by them if acting individually, or by other persons engaged in the same activity who are not members of such an association. See *Yakima Fruit Growers Ass'n v. Henneford,* 182 Wash. 437, 47 P. (2d) 831, 100 A.L.R. 435, wherein it was held that a nonprofit cooperative association is within the exceptions of the Washington Sales Tax Act exempting from the tax persons engaged in the business of growing any agricultural or horticultural product or crop, and that such a corporation is to be regarded in the same category as the individual producer. The basic conception of an agricultural cooperative association is that of a group of farmers who reside in the same vicinity acting together for their mutual benefit in the cultivating, harvesting and marketing of their agricultural products, and the association itself, with the special powers and limitations conferred by statute, is merely a convenient instrumentality in the hands of the farmers for carrying on such activities. As is stated in *United States v. Rock Royal Co-op.,* 307 U S. 533, 59 Sup. Ct. 993, 83 L. Ed. 1446: "These agricultural cooperatives are the means by which farmers and stockmen enter into the processing and distribution of *their* crops and livestock." In *Mountain States Ass'n v. Mon-*

*roe,* 84 Colo. 300, 269 Pac. 886, we held that the relation between a cooperative marketing association and its members is that existing between a trustee and his beneficiary or a principal and his agent. Under our cooperative marketing law, such associations are given the power "to act as agent or representative of any member or members in any of the above mentioned activities." (c. 106, §19 [c] '35 C.S.A.), which includes "marketing" (c. 106, §17, '35 C.S.A.). Section 35 of the Cooperative Marketing Act provides: "Any provisions of law which are in conflict with this article shall be construed as not applying to the associations herein provided for. Any exemptions whatsoever under any and all existing laws applying to agricultural products in the possession or under the control of the individual producer, shall apply similarly and completely to such products delivered by its members, in the possession or under the control of the association." Accordingly, because of the peculiar relationship between the cooperative association and its members, it would seem evident that such of the purely agricultural activities of the producer members as are incidental to his ordinary farming operations remain so whether they are performed by him on his farm or for him through the medium of his cooperative marketing association. By the circumstance that the expense of marketing is apportioned on a prorata basis among the members of the cooperative, the farmer member just as directly pays the wages for all labor involved in the marketing service as if he had paid his individual employees for doing the same work. In either case the labor incident thereto is "agricultural labor" and that is what the statute exempts. In the sense that the employees of the association to this extent are the farmers' instrumentalities for the performance of this service, there is nothing in the regulation inconsistent with this conclusion. A different result might attain where farm crops are marketed by a commercial "profit corpora-

tion" (See *H. Duys & Co. v. Tone*, 125 Conn. 300, 5 A. [2d] 23), or are not marketed in an unmanufactured state.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD not participating. MR. JUSTICE OTTO BOCK dissents.